NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11737

COMMONWEALTH  vs.  OLAJUWAN JONES-PANNELL.[1]


Suffolk.     April 6, 2015. - August 14, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, & Lenk,
JJ.


Constitutional Law, Stop and frisk, Reasonable suspicion.
     Search and Seizure, Protective frisk, Reasonable suspicion,
     Threshold police inquiry.  Threshold Police Inquiry.
     Practice, Criminal, Motion to suppress, Findings by judge.
     Firearms.



     Complaints received and sworn to in the Roxbury Division of
the Boston Municipal Court Department on August 8 and 25, 2011.

     After transfer to the Central Division of the Boston
Municipal Court Department, a pretrial motion to suppress
evidence was heard by Raymond G. Dougan, J.

     An application for leave to prosecute an interlocutory
appeal was allowed by Spina, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by him to
the Appeals Court.  After review by that court, the Supreme
Judicial Court granted leave to obtain further appellate review.


     John O. Mitchell for the defendant.

     _____

     [1] We follow our practice of spelling the defendant's name as
it appears in the complaints.

Cailin M. Campbell, Assistant District Attorney, for the Commonwealth.

DUFFLY, J.  The defendant, Olawajuwan Jones-Pannell, fled when two Boston police officers attempted to stop and question him on Norfolk Avenue, between East Cottage Street and Burrell Street, in the Roxbury section of Boston.[2]  When the officers pursued and apprehended him, a handgun containing seven rounds of ammunition fell from his pants.  The defendant was charged with several firearms offenses, as well as resisting arrest.  Prior to trial in the Boston Municipal Court, the defendant moved to suppress all evidence derived from the encounter.  After an evidentiary hearing, a Boston Municipal Court judge allowed the defendant's motion.  A single justice of this court granted the Commonwealth's application for leave to pursue an interlocutory appeal.  See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996).  The Appeals Court reversed the allowance of the motion to suppress, Commonwealth v. Jones-Pannell, 85 Mass. App. Ct. 390, 391 (2014), and we allowed the defendant's petition for further appellate review.  We affirm

_____

[2] The judge's findings refer to "Norfolk Street," but it is clear from the transcript of the suppression hearing that the judge and the parties were in agreement that the incident occurred on Norfolk Avenue.  We therefore refer to Norfolk Avenue throughout this opinion.

the motion judge's order allowing the motion to suppress.

1.  Background.  We summarize the judge's factual findings, which were prefaced with his statement that "[t]he following facts are the only ones found by the court based on credible testimony presented at the hearing on the motion to suppress."

At approximately 12:37 A.M., two Boston police officers were on routine patrol along Norfolk Avenue in an unmarked police vehicle.  The officers noticed the defendant, a black male, walking on the sidewalk ten to twelve feet away.  Neither officer recognized the defendant, although they were "familiar with the gang members active in the area."  The judge found that, "[a]lthough the officers knew of some crimes that had been reported in the area, Norfolk [Avenue] between East Cottage Street and Burrell Street was not a high crime area or so-called 'hot spot.'"  One officer observed the defendant's "right hand in his pants between his waist and his crotch but didn't see any other bulge in his pants."  The defendant "looked towards the police vehicle, looked up and down the street and continued walking."  One of the officers twice asked to speak to the defendant, but he looked away and kept walking.  The defendant accelerated his pace, keeping his hand in his pants, and the police vehicle kept pace with him.  As the defendant turned a corner, the officers got out of the vehicle.  One of the

officers called, "Wait a minute," in a loud voice. The defendant started jogging. The officer began chasing the defendant, who began running, with the officer in pursuit. The officer could see the defendant's left hand, but not his right hand. The defendant was apprehended twenty to thirty seconds later.

2. Discussion. "In reviewing a decision on a motion to suppress, 'we accept the judge's subsidiary findings absent clear error "but conduct an independent review of [the] ultimate findings and conclusions of law."'" Commonwealth v. Ramos, 470 Mass. 740, 742 (2015), quoting Commonwealth v. Colon, 449 Mass. 207, 214, cert. denied, 552 U.S. 1079 (2007). Although an appellate court may supplement a motion judge's subsidiary findings with evidence from the record that "is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony," Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008), it may do so only so long as the supplemented facts "do not detract from the judge's ultimate findings." Commonwealth v. Jessup, 471 Mass. 121, 127-128 (2015). See Commonwealth v. Scott, 52 Mass. App. Ct. 486, 492 (2001), S.C., 440 Mass. 642 (2004) (that appellate courts have been willing to supplement motion judge's findings of fact is based "not only upon the fact that the

evidence was uncontradicted but also upon our conviction that the motion judge explicitly or implicitly credited the witness's testimony").

In this case, it appears from the judge's prefatory statement that he intended to credit only those portions of the testimony that were reflected in his findings.[3]  "It is therefore not implicit in the judge's findings that [the judge] found the entirety of the officer's testimony credible."[4]  Commonwealth v. Daniel, 464 Mass. 746, 749 (2013).  Compare Commonwealth v. Gentile, 466 Mass. 817, 820-822 & n.5 (2014) (supplementing judge's findings with testimony that "was controverted and disputed," where judge found witness's testimony "credible in its entirety," but reversing judge's denial of motion to suppress because "even if the judge had explicitly made findings

---

[3] The judge's prefatory statement does not, as the Commonwealth contends, insulate his findings of fact from appellate review.  It is the motion judge's responsibility to make credibility assessments, weigh the evidence, and make findings of fact; it remains the responsibility of an appellate court to evaluate whether those findings are clearly erroneous.

[4] Where a party contends that a motion judge failed to make findings warranted by the evidence, and that supplementation with material facts would require reversal of the suppression order, a reviewing court will not engage in fact finding, but may remand so that the judge may consider whether additional findings are warranted.  See, e.g., Commonwealth v. Isaiah I., 448 Mass. 334, 337-338 (2007), S.C., 450 Mass. 818 (2008); Commonwealth v. Scott, 52 Mass. App. Ct. 486, 495-496 (2001).

adopting every factual assertion in [witness's] testimony, the findings would still fall short of establishing a reasonable belief that the defendant was in the home at the time of entry").

The Commonwealth essentially asks us to do what our case law proscribes:  to rely on testimony that was neither explicitly nor implicitly credited by the motion judge, otherwise put, that we in essence make additional findings, and reach a different result, based on our own view of the evidence. The Commonwealth argues that the judge wrongly determined the points at which the defendant began to jog and run, and therefore erred in deciding when the defendant was seized.  The Commonwealth asks also that we consider the officer's testimony anew and conclude, contrary to the judge's finding, that the neighborhood was in fact a "high crime" area.  The Commonwealth suggests further that we should supplement the judge's findings with additional evidence concerning the officer's training, in order to conclude that the officer reasonably suspected the defendant was carrying a firearm unlawfully.  This we cannot do. After review of the judge's findings and rulings and the record, we conclude that the judge's subsidiary findings are not erroneous; they amply "support his general findings [and] conclusions based thereon."  Commonwealth v. Murphy, 362 Mass.

542, 547 (1972).

a. Point at which the defendant was seized. Identifying the moment of seizure is a critical question for purposes of deciding a motion to suppress. "A person is seized by the police only when, in light of all of the attending circumstances, a reasonable person in that situation would not feel free to leave." Commonwealth v. DePeiza, 449 Mass. 367, 369 (2007).

Here, the judge concluded that the defendant was seized when an officer "exclaimed 'Wait a minute!' and then began chasing the defendant." The Commonwealth contends that the defendant was not seized until he was physically apprehended. It argues that "the defendant's flight was not prompted by anything the police did," Commonwealth v. Powell, 459 Mass. 572, 578 (2011), cert. denied, 132 S. Ct. 1739 (2012), because he already was running when the officer began to chase him. The judge found otherwise, and his findings are not clearly erroneous; although the officer's testimony characterized the defendant's pace in a number of ways, the judge's factual findings resolve the differences.[5] In any event, regardless of

---

[5] Specifically, the Commonwealth contends that the judge's finding that the defendant started "jogging," only after the officer yelled, "Wait a minute," is clearly erroneous. We are not convinced that there was clear error. While there is some

when the defendant started "jogging", or what rate of speed was meant by that term, the judge found that the defendant increased his pace after the officers initially asked to speak to him, and that the defendant started to run when the officers got out of the vehicle, one officer called out loudly to "[w]ait a minute," and the officer then gave chase. See Commonwealth v. Barros, 435 Mass. 171, 174-176 (2001). Contrast Commonwealth v. Powell, supra (no seizure where flight not prompted by police activity).

The defendant was free to reject the police officer's multiple requests to speak with him, just as he was free to respond to the requests by increasing his pace. Unlike the situations in Commonwealth v. Powell, supra, and Commonwealth v. Sykes, 449 Mass. 308, 313-314 (2007), the judge's findings in this case, which are supported by the evidence, support the conclusion that the defendant's eventual running was prompted by the officers' actions. The officer's loud command to "[w]ait," and his pursuit, had compulsory aspects that his prior requests did not. See Commonwealth v. Barros, supra at 174-176. The

possibly equivocal testimony about when the defendant started jogging, ample testimony in the record supports the judge's finding, and the judge clearly indicated that he did not find all of the testimony credible. The judge was not required to, and apparently did not, credit equivocal testimony to the effect that the defendant was already "jogging" prior to the moment the officer yelled at him to "[w]ait," and merely speeded up thereafter.

evidence amply demonstrated that the defendant was not free to leave at that point.  Id.

b.  Suspicion of criminal activity.  The legal question then becomes whether, at the time the defendant was seized, the officers "had an objectively reasonable suspicion of criminal activity, based on specific and articulable facts."  Commonwealth v. Barros, supra at 176.  The judge found that the factors relevant to the reasonableness of the officers' suspicion were:

> "flight from police officers and keeping his right hand in his pants between his waist and his crotch.  That it was just after midnight adds little if anything to the calculus of reasonable suspicion.  Other factors that in some cases support a finding of a reasonable suspicion are missing: this was not a high crime area; the police didn't know the defendant; there were no reports or radio calls of a crime having been recently committed in the area; the officers were on routine patrol."

The judge concluded that the defendant's refusal to respond to the officer's initial requests to speak with him did not generate an objectively reasonable suspicion and that, while flight from police and holding one's hand at one's waist or inside one's pants may sometimes indicate that an individual has a weapon, it also is consistent with other, nonviolent activities.  Although acknowledging these two factors to be "important," the judge determined that, without more, they were "not enough to support a conclusion of reasonable suspicion."

The Commonwealth contends that testimony concerning the character of the neighborhood as "high crime" added substantially to the reasonableness of the officers' suspicions. Although a characterization that an area is one of "high crime" may be relevant in determining whether a police officer's suspicion is reasonable, the accuracy of the characterization in a particular case depends on specific facts found by the judge that underlie such a determination, rather than on any label that is applied.  See Commonwealth v. Johnson, 454 Mass. 159, 163 (2009).  And, as we cautioned in that case, whether a neighborhood is a high crime area is a consideration that must be applied with care.

> "The fact that the officers were in a high crime area is unquestionably a factor to consider, albeit with caution; we recognize that so-called high crime areas are inhabited and frequented by many law-abiding citizens who are entitled to be protected against being stopped and frisked just because of the neighborhood where they live, work, or visit.  See, e.g., Commonwealth v. Holley, 52 Mass. App. Ct. 659, 663 (2001).  The term 'high crime area' is itself a general and conclusory term that should not be used to justify a stop or a frisk, or both, without requiring the articulation of specific facts demonstrating the reasonableness of the intrusion.  See Commonwealth v. Gomes, 453 Mass. 506, 513, (2009)."

Commonwealth v. Johnson, supra.

The judge's finding that the stop here did not take place in a "high crime" area was not clearly erroneous.  In some circumstances, locations where firearms offenses are common, or

where rival gang activity occurs, have been considered "high crime" areas. See, e.g., Commonwealth v. Pagan, 63 Mass. App. Ct. 780, 781-783 (2005). Compare Commonwealth v. Sykes, supra at 314-315 (in high crime area where large group congregated, attempting to avoid contact with police and clenching waistband while running contributed to reasonable suspicion). Isolated incidents of nearby gun activity, or the mere presence of gangs in the vicinity, however, does not require a finding that a particular street is a "high crime area." In this case, there was no testimony concerning arrests in the area of Norfolk Avenue; no testimony about any crime on the street in question; and no testimony that police patrolled Norfolk Avenue because of any specific criminal activity occurring there. Indeed, at the time of the stop, the officers were on routine patrol and were not responding to any radio call. One officer stated that he "knew of some crime that had been reported in the neighborhood," but this testimony was supported by few specific facts: he testified only to a radio call of "shots fired" about two weeks previously, and a shooting and recovery of a gun sometime in the preceding several months. With respect to his testimony that there was "undescribed gang activity in the area," the officer articulated no specific facts, and made no statement that firearms or violence were involved.

That one or more "crimes" occurred at some point in the past somewhere on a particular street does not necessarily render the entire street a "high crime area," either at that time or in perpetuity. Here, on the evidence before him, the judge's determination that "Norfolk [Avenue] between East Cottage Street and Burrell Street was not a high crime area" was not clear error.[6]

The same can be said with respect to the judge's findings concerning the officer's training and experience. The judge credited the officer's testimony that, nine years earlier, he had completed an eight-hour training class titled "Characteristics of Armed Gunmen." The judge was not required to conclude that this training -- by itself or in combination with other factors -- made the officer's suspicion objectively reasonable. Likewise, the judge was not required to make detailed findings about the content of the course. The judge's findings accurately reflect that, apart from the eight-hour

---

[6] Nor was there error, as the Commonwealth contends, in the judge's determination that the time of night added "little if anything to the calculus of reasonable suspicion." The defendant was stopped just after midnight on a summer evening. Nothing in the judge's decision suggests that he ignored the time or declined to consider it. To the contrary, the judge addressed the question of the time of night explicitly, apparently having concluded that, in light of the other evidence before him, the time at which these events took place was not a significant factor with respect to the reasonableness of the officer's suspicion.

training class about which there was testimony, there was "no other testimony about [the officer's] training."

c. Supplementation of judge's findings in future cases. We recognize that our decisions have engaged in (and condoned) a practice of "minor" or "interstitial" supplementation of a motion judge's findings with uncontroverted facts.  At times, that practice is benign, simply serving to fill out the story. See Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), citing Commonwealth v. Butler, 423 Mass. 517, 526 n. 10 (1996).  This practice also may be appropriate where a judge's findings are sparse and additional facts are needed to provide context.  See, e.g., Commonwealth v. Silva, 61 Mass. App. Ct. 28, 30 (2004); Commonwealth v. Hecox, 35 Mass. App. Ct. 277, 278 (1993); Commonwealth v. Coy, 10 Mass. App. Ct. 367, 368 (1980).  And, as noted, we may affirm a judge's order on a motion to suppress based not only on the facts as found, but also on evidence that was "implicitly or explicitly credited" by the motion judge. See Commonwealth v. Isaiah I., supra at 337.  See Commonwealth v. Jessup, 471 Mass. at 127-128 (appellate court may supplement with additional undisputed facts that "do not detract from the judge's ultimate findings"); Commonwealth v. Bostock, 450 Mass. 616, 617 n.1 (2008) (reviewing court may supplement "with uncontested testimony presented at the hearing by a witness

whose testimony largely was credited by the judge and does not contradict the judge's findings").

But the mere absence of contradiction is not enough to permit supplementation with facts not found by the judge. A reviewing court should exercise caution in supplementing a motion judge's findings of fact with evidence in the record that was not included in the judge's findings, and as to which the judge made no statement of credibility, on the assertion that the judge implicitly credited that testimony. While, for instance, a judge's denial of a defendant's motion to suppress may in some circumstances imply resolution of "factual issues in favor of the Commonwealth," see Commonwealth v. Hinds, 437 Mass. 54, 57 (2002), cert. denied, 537 U.S. 1205 (2012), quoting Commonwealth v. Grandison, 433 Mass. 135, 137 (2001), where a judge made "careful and detailed findings," we may have "no way to tell whether, or to what extent," the judge believed the testimony as to which he or she made no findings. See Commonwealth v. Correia, 381 Mass. 65, 76 (1980). See also Commonwealth v. Cataldo, 69 Mass. App. Ct. 465, 472 (2007) (judicial silence, reflected in absence of finding supportive of witness, can suggest that judge rejected witness's testimony).

Where a motion judge's findings of fact are insufficient to support the judge's conclusions of law, and it is not apparent

from the judge's decision or the record that the judge credited other testimony as to which no findings were made, ordinarily a reviewing court will reverse the judge's decision. See, e.g., Commonwealth v. King, 71 Mass. App. Ct. 737, 741-742 (2008). We have on occasion supplemented a judge's findings with additional facts necessary to support the judge's conclusion, such as where the judge found the witnesses' testimony "truthful and accurate." See, e.g., Commonwealth v. Anderson, 461 Mass. 616, 619 n.3, cert. denied, 133 S. Ct. 433 (2012). See also Commonwealth v. Scott, 52 Mass. App. Ct. 486, 492 (2001). In the absence of findings on a critical issue, however, or where the facts as found are "susceptible of more than one interpretation," and there is additional evidence in the record, neither implicitly credited nor discredited by the judge, remand may be appropriate. See Commonwealth v. Isaiah I., supra at 338-339 (remanding for further findings where judge made no credibility determination concerning detective's testimony, and we thus were unable to determine whether omission was error or testimony was not credited). A judge may resolve any uncertainty by including in the decision a statement as to whether the judge credits, or does not credit, all or a portion of a particular witness's testimony. See, e.g., Commonwealth v. Daniel, 464 Mass. 746, 749 (2013) (where judge stated that her

findings were based on "credible testimony" of police officer, but stated also that she did not find credible officer's testimony that he had heightened awareness of danger, "[i]t is therefore not implicit in the judge's findings that she found the entirety of the officer's testimony credible").

But, as our long-standing jurisprudence makes plain, in no event is it proper for an appellate court to engage in what amounts to independent fact finding in order to reach a conclusion of law that is contrary to that of a motion judge who has seen and heard the witnesses, and made determinations regarding the weight and credibility of their testimony. See, e.g., Commonwealth v. Clarke, 461 Mass. 336, 340-341 (2012) and cases cited; Commonwealth v. Stephens, 451 Mass. 370, 381 (2008), and cases cited. A motion judge cannot be deemed implicitly to have credited testimony that is contrary to the judge's ultimate findings and conclusions simply because, as is often the case in a criminal proceeding, only one witness testified at the hearing, so the testimony is "uncontroverted."

Here, the judge's decision included a detailed statement of facts, prefaced by a statement that the facts stated were based on the only testimony that the judge found credible. Such a statement leaves no room for supplementation of the judge's findings of fact. Because the judge's findings of fact were not

clearly erroneous, we must accept the judge's subsidiary findings of fact, and consider only whether they support the judge's ultimate findings and conclusions of law.[7]  See Commonwealth v. Thomas, 429 Mass. 403, 405 (1999) ("motion judge's findings of fact are binding in the absence of clear error").  "We cannot properly be asked to revise a judge's subsidiary findings of fact, where they are warranted by the evidence, or to review the weight (or credibility) of the evidence related to the findings."  Commonwealth v. Moon, 380 Mass. 751, 756 (1980), quoting Commonwealth v. Murphy, 362 Mass. 542, 550 (1972) (Hennessey, J., concurring).

Order allowing motion
to suppress affirmed.

---

[7]  An appellate court is, of course, "free to affirm a ruling on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings."  Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997).  See Commonwealth v. Bartlett, 465 Mass. 112, 117 (2013).