The defendant was indicted for trafficking in twenty-eight or more grams of heroin, and a related school zone violation. The alleged heroin was discovered by a State trooper through a patfrisk of the defendant following an exit order issued during a routine traffic stop. A Superior Court judge allowed the defendant's motion to suppress the alleged heroin, ruling that it was the product of an unjustified exit order and an unjustified patfrisk.[2] This court reversed that order in an unpublished memorandum and order issued pursuant to our rule 1:28. See Commonwealth v. Perez, 87 Mass. App. Ct. 1115 (2015). We remanded the case for the judge to consider certain additional arguments that the defendant had made to her, but that she had not reached in her initial ruling. The issues to be considered on remand included, among others, whether the trooper exceeded the permissible scope of a patfrisk.
On remand, the judge addressed the additional unresolved issues, ruling in the Commonwealth's favor on the scope of the patfrisk. However, her primary focus was the correctness of this court's memorandum and order regarding the propriety of the exit order and of the initiation of the patfrisk. She used the remand as an opportunity to state her view that this court both misinterpreted her factual findings and improperly made its own findings in violation of the principles enunciated in Commonwealth v. Jones-Pannell, 472 Mass. 429, 436-438 (2015) (discussing limitations on an appellate court's supplementation of a trial court judge's findings).[3] The judge reaffirmed her earlier ruling that both the exit order and the initiation of the patfrisk were invalid, and she once again allowed the motion to suppress on that basis.
After obtaining permission from a single justice of the Supreme Judicial Court, the Commonwealth brought a second interlocutory appeal. In this appeal, the Commonwealth argues that this court resolved the propriety of the exit order and the initiation of the patfrisk in the earlier appeal, and that the judge was not free to revisit those issues on remand. According to the Commonwealth, the judge exceeded the scope of the remand and in effect "overruled" this court's earlier decision.
In response, the defendant urges us to conclude, based principally on Jones-Pannell, that it was our court that overstepped its institutional bounds in the earlier appeal, and that the motion judge did not overstep her authority in making supplemental findings of facts on remand. He also argues that even to the extent that our earlier ruling established the "law of the case," we may revisit that ruling so as to avoid "manifest injustice" and to square the ruling with case law that was published in the interim. See King v. Driscoll, 424 Mass. 1, 7-8 (1996) (discussing when an appellate court can revisit an issue already decided in the same case). In the end, we need not resolve this particular debate between the parties, because we affirm the judge's order allowing the motion to suppress on different grounds.[4]
Background.[5] During the afternoon of February 27, 2011, State Trooper Joseph Gray was on routine patrol in the vicinity of Edward Everett Square in the Dorchester section of Boston. He randomly ran the license plate of the car in which the defendant was a passenger (a Honda) and learned from Department of Motor Vehicle records that that license plate was assigned to a different make of car.[6] This raised the possibility that the car was unregistered, and the trooper thus had the driver pull over. The driver, who was unable to produce a valid registration certificate, explained that his wife had just purchased the vehicle, and he produced a bill of sale documenting its purchase six days earlier. See G. L. c. 90, § 2, fifth par. (allowing the purchaser of a motor vehicle to transfer the registration of an existing motor vehicle that he no longer possesses to the newly acquired one, and establishing a seven-day grace period under which one can operate the vehicle using a bill of sale as documentation of the intended transfer). The trooper acknowledged at the motion to suppress hearing that he was aware of this newly-acquired vehicle provision, but he maintained that the driver did not produce a bill of sale or any other documentation to him (apart from his driver's license). The judge discredited the trooper's testimony on this point and instead found that the driver did provide the trooper a bill of sale.[7]
Asserting that the vehicle had to be towed because it was unregistered, the trooper ordered the defendant out of the vehicle and pat frisked him. On remand, the judge made the following findings regarding the patfrisk, none of which the Commonwealth challenges as clearly erroneous:
"In the course of the pat frisk, [the trooper] felt the front pocket of the defendant's jacket, and the defendant tensed up. [The trooper] felt something hard in the pocket, although it did have some 'give' to it. [The trooper] reached into the pocket and retrieved what was inside. The 'feel' of the object was not sufficiently definite for [the trooper] to form a reasonable belief that the object was drugs nor was it consistent with the feel of a sharp object, like a knife, that could be wielded as a weapon."
The object that the trooper retrieved from the defendant's pocket turned out to be "a bag containing a white powdery substance," the alleged heroin for which the defendant eventually was indicted.
Discussion. For purposes of our analysis, we assume arguendo that both the exit order to the defendant and the trooper's initiating a patfrisk of him were justified. We turn to an issue that the parties agree was properly before the judge on remand: whether the trooper exceeded the permissible scope of a patfrisk.[8]
A patfrisk is "a carefully limited search of the outer clothing of [a detained person who poses a safety threat] in an attempt to discover weapons which might be used to assault [the officer]." Commonwealth v. Torres, 433 Mass. 669, 675 n.6 (2001), quoting from Terry v. Ohio, 392 U.S. 1, 30 (1968). As a matter of constitutional law, a patfrisk must be "confined to what is minimally necessary to learn whether the suspect is armed and to disarm him should weapons be discovered."[9] Commonwealth v. Wilson, 441 Mass. 390, 396 (2004). "Only after the pat-down gives indication that a weapon is present do the police have the privilege to search further." Commonwealth v. Silva, 366 Mass. 402, 408 (1974).[10]
The Commonwealth makes no claim that the trooper had an objectively reasonable basis for believing that the object he felt through the defendant's clothing was a gun or knife. In any event, the fact that the trooper discerned that the object "had some 'give' to it" would undermine such a claim.
Of course, as the judge recognized, in seeking to protect themselves from weapons, police are not limited to looking for only guns or knives. Police may look for other weapons or, for that matter, "objects that might be used as a weapon." Commonwealth v. White, 469 Mass. 96, 100 (2014). In addition, in order that the police adequately can protect themselves, the case law reflects that officers must be given some latitude in conducting patfrisks. See, e.g., Commonwealth v. Johnson, 413 Mass. 598, 601 (1992), quoting from Terry v. Ohio, supra at 30 (upholding the retrieval of a bag of powder during a patfrisk where, after the defendant led police on a high speed chase, he was observed placing something inside the waistband of his pants, and "it was necessary for the protection of [the officer] and others to take swift measures to discover the true facts and neutralize the threat of harm if it materialized"). Nevertheless, that latitude is not unbounded.
In the case before us, the Commonwealth has not articulated any objective basis for concluding that a police officer in the trooper's position reasonably could believe that the object he felt was a potential weapon that posed a safety risk to him.[11] Instead, the Commonwealth appears to take the position that under the case law, any time a police officer conducting a patfrisk feels an object that could be characterized as "hard," then-regardless of the object's size, shape, and whether it has "some 'give' to it"-the officer is justified in removing that object for inspection. We do not interpret the cases as standing for that principle.[12] To the contrary, the cases eschew categorical line drawing and emphasize the need to examine "whether all the circumstances faced by the officer, taken together, 'are enough to warrant belief by a reasonably prudent man ... that his safety or that of others was in danger.' " Johnson, 413 Mass. at 600, quoting from Commonwealth v. Fraser, 410 Mass. 541, 546 (1991) (further citations omitted). Applying that standard here, we conclude that the Commonwealth has not justified the trooper's going beyond the initial patfrisk.
In sum, we conclude that-assuming that the initiation of the patfrisk was valid-the trooper exceeded its permissible scope when he retrieved the bag of alleged heroin from the defendant's pocket without having any reasonable grounds for believing the object he felt posed a safety threat to him. On this basis, we affirm the order allowing the defendant's motion to suppress without reaching the merits of the other issues the Commonwealth raises.
Order allowing motion to suppress affirmed.

The judge also allowed the suppression of certain additional evidence covered by the defendant's motion, including statements that he made after the alleged heroin was found and additional apparent drugs found on the defendant's person during booking. The judge reasoned that if the discovery of the alleged heroin was unjustified, then the additional evidence was the "fruit of the poisonous tree." There appears to be no dispute between the parties as to this point.

The rescript in our earlier decision was issued on July 29, 2015, and the judge issued her postremand memorandum and order on November 17, 2015. Jones-Pannell was published in the interim.

The single justice initially denied the Commonwealth's motion for leave to pursue the second interlocutory appeal, but allowed it on reconsideration. In a five-page memorandum and order, the single justice indicated her desire to give the Appeals Court an opportunity to address "whether, in reversing the motion to suppress, [the initial panel] honored the boundaries established by Jones-Pannell." We do not interpret the single justice's comments as prohibiting this panel from relying on alternative grounds in deciding the appeal that she allowed to go forward. We pass over the question whether the single justice would have had the authority to restrict a panel of this court in that manner. Compare Mass.R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996) (setting forth the options available to a single justice on an application for leave to file an interlocutory appeal of a ruling on a motion to suppress).

Except as noted, the factual recitation that follows is drawn from the judge's initial findings. See Commonwealth v. Washington, 449 Mass. 476, 480 (2007). We additionally note that, given how we resolve this appeal, we need not get into the nuanced debate between the parties with respect to whether the facts on which we relied in our earlier decision improperly strayed from the judge's findings.

Gray maintained that he ran the license plate only after noticing that the car appeared to be missing an inspection sticker. The judge did not address this issue in her initial findings, but in her supplemental findings issued on remand, she appears to have credited the trooper's testimony on this point. Nothing ultimately turns on this.

No bill of sale was entered in evidence, and the judge did not make findings regarding its specific content (other than its date).

Although the judge ultimately agreed with the Commonwealth's position on this issue, the Commonwealth proactively briefed the merits of the issue in its appellate brief.

It bears noting that when he was pat frisked, the defendant was in no sense a "suspect"; according to the uncontested findings of the trial judge, the trooper had no basis whatsoever to believe that the defendant had violated the law.

This is not a "plain feel" case where the trooper claimed he could discern by touch that the object he felt during the patfrisk was contraband. See Wilson, supra at 397.

In his testimony, the trooper made no claim that he believed the object he felt could be a gun, knife, or other weapon based on its size or shape. He described the object as being "approximately the size of a billiard [b]all."

An illustrative example is Commonwealth v. Torres, 433 Mass. 669, 675 & n.6 (2001), a case heavily relied upon by the Commonwealth. In that case, the police felt a "hard" object in the defendant's waistband and lifted his shirt to discover a gun there. To be sure, in summarily upholding the scope of the patfrisk, the opinion notes that the object felt was "hard" without providing any further description. However, the opinion also reveals that the officers had specific concerns that the person might be secreting a gun on him, and the hard object that was felt in fact turned out to be one.