NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1032

COMMONWEALTH

vs.

ALFRED B. FLORES.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury-waived trial in the Superior Court, the defendant, Alfred B. Flores, was convicted of three counts of carrying a firearm without a license and three counts of possessing a large capacity feeding device.[1] On appeal, he claims that (1) the motion judge erred in denying his motion to suppress, (2) the trial evidence was insufficient to prove the offenses, and (3) the trial judge erroneously admitted a stipulation to essential elements of the offenses in violation of Mass. R. Crim. P. 23 (a), 471 Mass. 1501 (2015). Although we

_____

[1] The Commonwealth filed a nolle prosequi on the charges of assault and battery by means of a dangerous weapon, assault and battery on a family or household member, and witness intimidation.

conclude that the evidence sufficed and that there was no error in the admission of the stipulation, we agree that the motion judge's findings of fact were insufficient to support his rulings on the motion. We therefore remand the matter to the Superior Court for further proceedings consistent with this memorandum and order and retain jurisdiction to decide whether there was error in the denial of the motion to suppress.

Background. 1. Motion to suppress. The motion judge found the following facts. On July 2, 2017, at approximately 12:45 A.M.,[2] Malden police officers responded to a domestic disturbance. Upon arrival, they spoke with a woman who reported that the defendant was around the corner of her home. The police went around the corner and saw the defendant placing a bag in a pickup truck. After speaking with the defendant, the police learned that there were guns in the truck. The police searched the truck, found a gun, and handcuffed the defendant. The police picked up a bag with multiple compartments, showed it to the defendant, and asked him where the guns were in the bag. The defendant told them, and the police removed additional guns from the bag. Sometime thereafter the police asked the defendant if he had a firearm license; he answered no.

---

[2] While the motion judge found that the officers arrived at 12:45 P.M., this appears to be a scrivener's error, as the evidence was that the police responded during the midnight shift.

2

The defendant filed a motion to suppress the firearms and ammunition, as well as the statements that he had made to the police. The motion judge initially allowed the motion in part, concluding that "[f]rom the point of handcuffing the defendant was in custody. Miranda was not given until arrival at the station house." The motion judge ordered the suppression of the defendant's statements made "[f]rom the point of handcuffing forward," except for his answer to the question whether he had a firearms license.[3] The motion judge further concluded that the police search "was a valid consent search even though there is no signed consent form, a valid search incident to arrest, and possibly the unusual case where the inevitable discovery doctrine applies."

At the motion hearing, the defendant introduced in evidence the transcript of a G. L. c. 276, § 58A hearing. After reviewing the transcript, the motion judge amended his order and denied the motion in its entirety. The motion judge further found that the police recovered a pistol from the truck's glove compartment and discovered ammunition on a seat, in plain view. Once this happened, the motion judge found, "[p]olice then went back to the defendant, not[ ]while holding the bag and, because there were a lot of things in the truck, asked him where the

_____

[3] The order did not address whether the defendant's answers to routine booking questions should be suppressed.

3

other guns were. He said wrapped up in the bag. Police retrieved the bag and the gun." The motion judge concluded that the police were "entitled" to search the truck for guns because the defendant consented to the search and because the plain view doctrine applied. The motion judge also concluded that "the defendant was not in custody until the end of the incident," that "[t]here was no custodial interrogation within the meaning of that term of art," and that "the statements were voluntary beyond a reasonable doubt."

The Commonwealth then filed a motion for supplemental findings of fact "[b]ecause the validity of the search is likely to be challenged in an appeal." The Commonwealth requested supplemental findings of fact with respect to (1) "the specific fact on which the Court relied to conclude that the defendant consented to the search," and (2) "[t]he point in time at which police asked the defendant whether he had a firearm license." The motion judge denied the motion in a margin endorsement without explanation.

2. <u>Jury-waived trial</u>. The trial judge could have found the following facts. On July 2, 2017, at approximately 12:30 <u>A</u>.<u>M</u>., Malden police officer Michael Polston responded to a call for a domestic disturbance. Upon arriving at the home, Polston spoke with the woman who lived there. She told the police that the defendant could be in possession of firearms. Polston found

4

the defendant nearby on an adjacent street, putting something into a black pickup truck. The defendant told Polston that he had an argument with his girlfriend and that he was trying to leave. The defendant produced a New Hampshire driver's license and registration. He told Polston that he had three guns inside the truck, one in the glove box and two in a bag. He also stated, when asked, that he did not have a license to carry or a firearm identification card.[4] Polston searched the truck and retrieved an unloaded Glock firearm from the glove box, as well as three Glock magazines, each containing fifteen live rounds, from the front passenger seat. He also recovered two handguns from a bag in the back seat area of the truck: a Colt .38 caliber police special revolver and a Browning Arms .22 caliber semiautomatic handgun. A firearm storage bag, holster, and .22 caliber magazine were recovered with the two handguns. Polston placed the defendant under arrest.

The parties stipulated that the three guns each satisfied the definition of a firearm under G. L. c. 140, § 121, and that the three magazines each met the definition of a large capacity feeding device. The trial judge accepted the stipulation before

---

[4] Mario Monzon, a keeper of records for the Department of Criminal Justice Information Services (DCJIS), testified that there was no record of anyone with the defendant's name and date of birth ever having a Massachusetts license to carry, firearm identification card, or an application for the same that had previously been denied.

the trial began, and it was entered into evidence without any objection after the Commonwealth rested its case and the trial judge denied the defendant's motion for a required finding of not guilty.

Discussion. 1. Motion to suppress. The defendant argues that the order denying the motion to suppress must be reversed because the motion judge's factual findings were insufficient to support his conclusion that the defendant was not subjected to custodial interrogation.[5] We agree that the findings were insufficient. "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law" (quotations and citation omitted). Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015). Although we "may supplement a motion judge's subsidiary findings with evidence from the record that 'is uncontroverted and undisputed and where the judge explicitly or implicitly credited the witness's testimony,'" id., quoting Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008), we "may do so only so long as the supplemented facts 'do not detract from the judge's ultimate findings.'" Jones-Pannell,

_____

[5] The defendant also argues that his statements and the fruits thereof should have been suppressed because he was subjected to custodial interrogation without Miranda warnings. See Miranda v. Arizona, 384 U.S. 436, 444-445 (1966).

6

supra, quoting Commonwealth v. Jessup, 471 Mass. 121, 127-128 (2015).  If we conclude "that the judge's factual findings are inadequate and would require us to add facts in an attempt to fill in gaps in the findings," then we will "remand the case to the judge for further factual findings, reconsideration of legal conclusions in light of the further findings, and other proceedings consistent with [our conclusion]."  Isaiah I., supra at 335.  We will not engage in independent fact finding.  See Jones-Pannell, supra at 432 n.4.

Here, the motion judge's factual findings are inadequate for us to conduct an independent review of his conclusion that the defendant was not subjected to custodial interrogation.  In determining whether a defendant was subjected to custodial interrogation, we consider four factors:

> "(1) the place of the interrogation; (2) whether the officers have conveyed to the person being questioned any belief or opinion that that person is a suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the person being interviewed; and (4) whether, at the time the incriminating statement was made, the person was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview was terminated with an arrest."

Commonwealth v. Groome, 435 Mass. 201, 211-212 (2001).  In this case, the motion judge did not address or apply any of the Groome factors, and few, if any, of the findings of fact bear on them.  In addition, because the motion judge did not implicitly

7

or explicitly credit Polston's testimony, we cannot supplement his findings with uncontroverted and undisputed evidence from the record. See Jones-Pannell, 472 Mass. at 431. Because "the judge's factual findings are inadequate and would require us to add facts in an attempt to fill in gaps in the findings," Isaiah I., 448 Mass. at 335, we must remand this case to the Superior Court for further proceedings.[6]

2. Sufficiency of evidence. The defendant next argues that the evidence at trial was insufficient to prove that he knowingly possessed the firearms and large capacity feeding devices because (1) there was no evidence that he resided in Massachusetts for more than sixty days[7] and (2) there was no evidence that he knew his possession of the firearms and large capacity feeding devices was illegal. We are not persuaded.

---

[6] We note that the motion judge has since retired and that it will be necessary for another judge to hold a new evidentiary hearing to make the required credibility determinations.

[7] Under G. L. c. 140, § 129C, new residents of Massachusetts are exempt from the firearm licensing requirement for sixty days. At the time of the defendant's arrest in 2017, the statute provided that "[n]o person, other than a licensed dealer or one who has been issued a license to carry a pistol or revolver or an exempt person . . . shall own or possess any firearm, rifle, shotgun or ammunition unless he has been issued a firearm identification card." G. L. c. 140, § 129C, first par., as amended by St. 2010, c. 466, § 2. An exempt person included "any new resident moving into the commonwealth, with respect to any firearm, rifle or shotgun and any ammunition therefor then in his possession, for 60 days after such . . . entry into the commonwealth." G. L. c. 140, § 129C (j), as amended by St. 2010, c. 466, § 2.

8

When reviewing a claim of insufficient evidence, we view the evidence in the light most favorable to the Commonwealth and determine whether it, together with any inferences permissibly drawn therefrom, is sufficient to permit the judge to find each essential element of the crime charged beyond a reasonable doubt. See Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979). "The evidence may be direct or circumstantial, and we draw all reasonable inferences in favor of the Commonwealth." Commonwealth v. Watson, 487 Mass. 156, 162 (2021), quoting Commonwealth v. Ayala, 481 Mass. 46, 51 (2018).

Here, in the light most favorable to the Commonwealth, there was ample evidence that the defendant was a New Hampshire resident who did not have a Massachusetts license to carry. The defendant had a New Hampshire driver's license and his truck was registered in New Hampshire. There was no evidence or suggestion that the defendant lived in Massachusetts; when he was first approached by police, the defendant told them that he was trying to leave the home after having an argument with his girlfriend, who lived there. In addition, the defendant told Polston that he did not have a license to carry or a firearm identification card, and the DCJIS keeper of records testified that there was no record in Massachusetts of anyone with the defendant's name and date of birth ever having a license to

9

carry, a firearm identification card, or an application for the same that had previously been denied.

Furthermore, to convict the defendant of the charges, the Commonwealth did not need to prove that the defendant knew his possession of the firearms and high capacity feeding devices was illegal. See Commonwealth v. Shaw, 105 Mass. App. Ct. 680, 685-689 (2025) ("the Commonwealth is required to prove only that a defendant possessed a firearm without a license; it is not required to prove a defendant knows that the law requires him to have a license to carry"), further appellate review granted on other grounds, 496 Mass. 1111 (2025). Thus, we conclude that the evidence was sufficient to support the convictions beyond a reasonable doubt.

3. Stipulation. The defendant last argues that his convictions must be reversed because the admission of the parties' stipulation to essential elements of the charged offenses violated Mass. R. Crim. P. 23 (a),[8] for two reasons. First, he claims that because the stipulation was not personally signed by him, it was error to admit it, notwithstanding that it

_____

[8] Rule 23 (a) of the Massachusetts Rules of Criminal Procedure provides that a "stipulation to an essential element of a charged offense entered by the parties before . . . trial shall be in writing and signed by the prosecutor, the defendant, and defense counsel. [The] stipulation shall be read to the jury before the close of the Commonwealth's case and may be introduced into evidence."

10

was signed by the prosecutor and defense counsel.  Second, he argues error because the stipulation was not introduced as evidence until after the Commonwealth rested its case and after the defendant moved for a required finding of not guilty.  Because the defendant did not object to the admission of the stipulation at trial,[9] we review to determine whether, if error,

_____

[9] Prior to the start of the trial, the defendant and his counsel engaged in the following discussion:

The Trial Judge:  "Have we covered everything we need to cover pretrial-wise?"

Defense Counsel:  "Yes.  Judge, I'd just point out that with respect to the stipulation, I've gone over that with my client.  I've explained to him that that's one of the elements that the Commonwealth has to prove, and I've explained the implications of the stipulation as well to him and he understands that."

The Trial Judge:  "Yes.  Good.  I appreciate that."

Defense Counsel:  "So the record's clear."

The Trial Judge:  "[Mr. Flores], you understand all that?"

The Defendant:  "Yes, sir."

After the Commonwealth rested its case, the stipulation was admitted into evidence as follows:

The Clerk:  "The stipulation, could we mark it [exhibit] 15?"

The Prosecutor:  "Oh, yes, I would ask -- "

The Trial Judge:  "Here's the stipulation right here."

The Prosecutor:  "It was accepted by the court.  I would just ask that it be formally marked."

11

it created a substantial risk of a miscarriage of justice. See Commonwealth v. McCoy, 456 Mass. 838, 850 (2010). The trial judge's admission of the unsigned stipulation was not error, let alone structural error requiring "automatic reversal" of the conviction "without any inquiry into prejudice." Weaver v. Massachusetts, 582 U.S. 286, 290 (2017). See id. at 295-296 (errors are structural where [1] "the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest," such as "the defendant's right to conduct his . . . own defense"; [2] "the effects of the error are simply too hard to measure," such as "when a defendant is denied the right to select his . . . own attorney"; or [3] "if the error always results in fundamental unfairness," such as "if an indigent defendant is denied an attorney or if the judge fails to give a reasonable-doubt instruction").

Here, "[a]s this was a bench trial, we presume that the judge instructed himself correctly on the law." Commonwealth v. Jackson, 80 Mass. App. Ct. 528, 530 (2011). The defendant was not prejudiced by the admission of the stipulation because he had full knowledge of both the stipulation's contents and the

---

The Trial Judge: "All right."

The stipulation was then marked and admitted into evidence without objection.

12

implications of stipulating to the essential elements of the charges.  The defendant made those acknowledgements before trial began, and so he was not prejudiced by the fact that the stipulation was marked after the Commonwealth had rested its case-in-chief.

Conclusion.  The matter is remanded to the Superior Court for further proceedings consistent with this memorandum and order, and we retain jurisdiction to decide whether there was error in the denial of the motion to suppress.  Within four months of entry of the rescript, the Superior Court shall provide additional findings on the motion to suppress, and such findings shall be filed by the parties with the Appeals Court. There shall be no further appellate briefing pending further order of this court.  Appellate proceedings are stayed pending further order of this court.

So ordered.

By the Court (Blake, C.J.,
  Neyman & Grant, JJ.[10]),

Paul Little

Clerk

Entered:  February 4, 2026.

---

[10] The panelists are listed in order of seniority.