NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-551

COMMONWEALTH

vs.

ANGEL VILLAR NIVAR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was indicted on counts of trafficking between 100 and 200 grams of cocaine, distribution of a class A substance (fentanyl), and distribution of a class B substance (cocaine). After an evidentiary hearing, a Superior Court judge allowed the defendant's motion to suppress evidence. A motion to reconsider was denied by the judge. A single justice of the Supreme Judicial Court granted the Commonwealth leave to file an interlocutory appeal and reported the matter to this court. See Mass. R. Crim. P. 15 (a) (2), as amended, 476 Mass. 1501 (2017). We affirm.

Background. We summarize the facts as found by the judge, supplemented by relevant facts from testimony and exhibits

admitted at the suppression hearing.  On February 4, 2023, a Methuen police officer, who had received extensive training in conducting drug investigations and had participated in more than a few hundred narcotics investigations, was conducting surveillance in an area where he had previously investigated drug activity between 2017 and 2020.  Around 5 P.M., the officer was monitoring a residence, 22 Ashland Avenue, that was being investigated for reports of drug use, drug distribution, and prostitution.  The officer saw a woman leave the residence and get into the front passenger seat of a vehicle driven by the defendant.  As the vehicle drove down Ashland Avenue toward the police cruiser, the occupants saw the officer in his cruiser and appeared to the officer to have "startled looks."  The officer saw the vehicle drive away from Ashland Avenue and his location.  He believed the vehicle "had no logical path to go anywhere in particular" and was going back to drop off the passenger at the residence.

The officer ran the license plate number and saw that the vehicle's registered owner, the defendant, did not have an active Massachusetts driver's license on record.  The officer pulled the vehicle over.  The officer asked the defendant in Spanish if he had a license, and the defendant replied, "Yes." He provided the officer with a driver's license from the

2

Dominican Republic. The officer determined that the defendant could not drive because he resided in Massachusetts but did not have a valid Massachusetts driver's license. The officer saw that the front seat passenger was not wearing a seat belt and wanted to get her identification to potentially cite her for the infraction. The passenger did not have any identification on her and told the officer that she lived at 22 Ashland Avenue. The officer ran the passenger's board of probation record and saw that she had prior drug convictions from 2017 and 2019.

The officer believed that the defendant and passenger had been engaging in a drug transaction based on the passenger's demeanor when answering his questions, her criminal history, his belief that she did not speak Spanish despite claiming that she did, the fact that the defendant picked her up at a residence where there was suspected drug activity, and his belief that the defendant appeared to be "taking a trip around the block." He asked the passenger to step outside of the vehicle, questioned her privately, and told her that he suspected that she had bought drugs from the defendant. The passenger admitted that she was involved in a drug deal with the defendant while they were in the vehicle. The officer then arrested the defendant. Subsequently, the passenger turned over two bags of suspected illegal drugs to the officer. When the police searched the

vehicle, they found more suspected illegal drugs in the center console.

After conducting an evidentiary hearing on the motion to suppress, the judge allowed the motion and made oral findings.

Discussion.  "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error, except where those findings rest solely on documentary evidence, such as a video recording, which we review de novo."  Commonwealth v. Robinson, 497 Mass. 156, 161 (2026). We "conduct an independent review of [the judge's] ultimate findings and conclusions of law" (citation omitted). Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).  Where the judge based his findings on both live testimony and documentary evidence, "[t]he case is to be decided upon the entire evidence, . . . giving due weight to the judge's findings that are entitled to deference" (quotations and citation omitted).  Commonwealth v. Tremblay, 480 Mass. 645, 655 (2018). Determining "the weight and credibility of the testimony is the function and responsibility of the judge who saw and heard the witnesses."  Commonwealth v. Neves, 474 Mass. 355, 360 (2016).

The Commonwealth argues that the judge erred in allowing the defendant's motion to suppress because the officer was justified in extending the traffic stop by asking the passenger

to exit the vehicle to speak with her after developing reasonable suspicion that the defendant and passenger had engaged in a drug transaction.  "[A]n exit order is justified during a traffic stop where (1) police are warranted in the belief that the safety of the officers or the safety of others is threatened; (2) police have reasonable suspicion of criminal activity; or (3) police are conducting a search of the vehicle on other grounds."  Commonwealth v. Torres-Pagan, 484 Mass. 34, 38 (2020).  The Commonwealth's argument focuses on the second prong -- whether the officer had reasonable suspicion that the defendant and passenger had engaged in a drug transaction.  We agree with the judge's finding that the officer did not have reasonable suspicion based on specific and articulable facts to justify the exit order.  See Commonwealth v. DePeiza, 449 Mass. 367, 371 (2007) (reasonable suspicion must be grounded in specific, articulable facts rather than on hunch).

The judge found that the evidence did not support the officer's belief that the vehicle was "tripping the block with no meaningful destination in mind" and that the vehicle was going to return to the residence to drop off the passenger where she was picked up.  The judge found that nothing about the defendant's operation of the vehicle was "suspect" or "inappropriate" and that "[h]is direction in path was perfectly

5

logical to going [to] some other place.  It was not a trip around the neighborhood that you might typically see with a meaningless ride.  In fact, it was going towards a café."  Contrast Commonwealth v. Damelio, 83 Mass. App. Ct. 32, 34 (2012) ("meaningless ride" supported reasonable suspicion where defendant made "U-turn" and returned to same street).

We are unpersuaded by the Commonwealth's argument that the officer could reasonably believe the passenger was lying about her relationship with the defendant because "her claimed ability to speak Spanish was a lie" and the defendant and passenger appeared unable to communicate with each other.  The only information that emerged about their relationship was that the passenger had "been friends with [the defendant's] dad for a while," that the father no longer lived nearby, and that the passenger and defendant "hang out . . . sometimes."

Although the passenger's initial claim that she spoke Spanish might appear as an exaggeration by some standards given her inability to interpret phrases such as "zip code," she clarified that she had learned her Spanish from the defendant's father and the defendant and that she was "learning still."  Nothing about these representations was objectively implausible, especially where the officer had no information about the defendant's father -- for example, his level of English

6

proficiency -- or the passenger's relationship with him.
Compare Commonwealth v. Henley, 488 Mass. 95, 103 (2021)
(defendant's implausible explanation in response to police
questioning factored into reasonable suspicion).  Furthermore,
the Commonwealth cites no authority, nor do we know of any, to
support its apparent assertion that it is inherently implausible
for two people who do not speak a common language to spend time
together in a noncriminal capacity.

The remaining factors which the Commonwealth argues
supported the officer's reasonable suspicion are his expertise,
the active investigation into 22 Ashland Avenue for drug
activity and the officer's previous police work in the
surrounding neighborhood between 2017 and 2020, the defendant
and passenger's startled looks when they first drove past the
officer, and the passenger's 2017 and 2019 convictions for
possession of narcotics.  These factors, standing alone, did not
amount to more than a hunch.  See Commonwealth v. Cordero, 477
Mass. 237, 243-246 (2017) (no reasonable suspicion to extend
investigation where defendant gave evasive answers, appeared
nervous, had history of criminal convictions, and trooper opined
that defendant lived in "major drug source city").

The record supported the judge's findings that there was no
evidence of drug activity -- no drugs or drug paraphernalia were

7

in plain view -- and no evidence of any furtive gestures by either occupant; the judge found that the occupants "weren't doing anything that might indicate that . . . they were engaging in some kind of drug activity" or that there would be a safety concern. Contrast Commonwealth v. Stephens, 451 Mass. 370, 374 (2008) (exit order valid where trooper saw driver hold black object in chest area and quickly lower it and saw "hundreds of dollars" and altered plastic bags consistent with packaging of illegal drugs).

Throughout the entirety of the stop, the defendant and the passenger complied with the officer's requests and answered his questions. In response to the officer's requests, the defendant gave the officer his address and provided the vehicle registration and his driver's license; the passenger gave the officer her identifying information when asked. Moreover, the judge found that none of the statements of the defendant or passenger proved to be false.

For these reasons, we conclude that the officer's exit order was unsupported by reasonable suspicion where the evidence

did not support specific and articulable facts that the defendant and passenger had committed any crime.

Order allowing motion to
  suppress affirmed.

By the Court (Meade,
  D'Angelo & Tan, JJ.[1]),

Clerk

Entered:  May 13, 2026.

---

[1] The panelists are listed in order of seniority.

9