NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-948                                          Appeals Court


COMMONWEALTH  vs.  BRADLEY J. ST. GEORGE.


No. 15-P-948.

Norfolk.     April 14, 2016. - July 22, 2016.

Present:  Green, Trainor, & Milkey, JJ.


Controlled Substances.  Constitutional Law, Investigatory stop,
    Reasonable suspicion.  Threshold Police Inquiry.  Search
    and Seizure, Threshold police inquiry, Reasonable
    suspicion.  Practice, Criminal, Assistance of counsel,
    Plea.



Complaint received and sworn to in the Quincy Division of
the District Court Department on May 17, 2010.

A pretrial motion to suppress evidence was heard by Kevin
J. O'Dea, J.; the case was tried before Robert P. Ziemian, J.,
and a motion for postconviction relief, filed on March 26, 2014,
was heard by him.


Dana Alan Curhan for the defendant.
Susanne M. O'Neil, Assistant District Attorney, for the
Commonwealth.


TRAINOR, J.  The defendant, Bradley J. St. George, appeals

his convictions of distribution of a class D substance, see

G. L. c. 94C, § 32C, and violating the drug laws near a school

zone or park, see G. L. c. 94C, § 32J. The defendant contends that the judgments should be reversed for three reasons. First, the defendant argues that his motion to suppress should have been allowed. Second, the defendant maintains that the evidence was insufficient to support his convictions. Third, the defendant claims that the trial judge erred in denying his motion for new trial because his trial counsel deprived him of effective assistance of counsel. We affirm.

Background. The defendant challenges the motion judge's decision on his motion to suppress, as well as the sufficiency of evidence at trial. We will, therefore, first summarize the evidence presented at the hearing on the motion to suppress. We will then summarize the additional evidence presented at trial.

On May 14, 2010, at approximately 7:45 P.M., Quincy police Detectives William O'Brien and Dennis Keenan were working in the drug control unit. Detective O'Brien noticed a man, later identified as Robert Fitzmorris, standing in front of an apartment building. He talked on his cellular telephone, then sat in front of the building and appeared to be waiting. Detective O'Brien placed him under surveillance and contacted Detective Keenan for assistance. Less than one minute later, Detective O'Brien observed a vehicle, driven by the defendant, pick up Fitzmorris. Detective O'Brien followed the defendant as he drove into the parking lot of the St. Mary School and stopped

next to a gray Mitsubishi automobile.[1]  At this point, Detective Keenan picked up surveillance of the automobile and the two men. Detective Keenan observed Fitzmorris leave the defendant's vehicle with a big, brown paper bag in his hand.  Fitzmorris entered his vehicle, the gray Mitsubishi, while the defendant drove back in the direction that Detective O'Brien had driven.

Because Detective Keenan believed he had witnessed a street level drug transaction, he drove his cruiser into the parking lot and approached Fitzmorris on foot, displaying his police badge.[2]  Fitzmorris put his vehicle in gear and "sped" out of the parking lot.  Detective O'Brien also witnessed Fitzmorris apparently attempt to flee.  A short distance away, Detective Keenan stopped Fitzmorris.  Detective Keenan asked Fitzmorris if he had just purchased drugs, to which he responded "only weed." Detective Keenan seized the marijuana and radioed Detective O'Brien to inform him that he had recovered approximately one pound of marijuana.

When Detective O'Brien saw Fitzmorris flee, he followed the defendant.  At a red traffic light, he stopped in front of the defendant, got out of his vehicle, displayed his badge, and told the defendant to turn off his vehicle.  Detective O'Brien could

---

[1] The parking lot was about one hundred yards from where the defendant picked up Fitzmorris.

[2] Both detectives were in unmarked police cruisers and plain clothes.

see the defendant had a large sum of money in his right hand and that he appeared nervous and was looking around.  The defendant also appeared to be attempting to hide the money he had in his hand.  Detective O'Brien ordered the defendant to turn off his vehicle again, and he repeated this order several more times.  The defendant failed to comply, prompting Detective O'Brien to reach into the vehicle and turn it off himself.  Detective O'Brien then put the defendant in handcuffs and had him sit on the sidewalk.  When Detective Keenan radioed Detective O'Brien and reported that he had recovered approximately one pound of marijuana from Fitzmorris, Detective O'Brien placed the defendant under arrest.  While conducting an inventory search of the defendant's vehicle, Detective O'Brien found $700 in the center console and $110 in the defendant's wallet (in addition to the $1,000 found in his hand when he was stopped).[3]  Detective O'Brien also found "cuff sheets" showing names and money owed, and a bank receipt showing the defendant had a bank balance of $74,000.[4]

The testimony of Detectives Keenan and O'Brien at trial was substantially similar to their testimony at the suppression

---

[3] Detective O'Brien testified that the street price of one pound of marijuana was from $700 to $3,000 and that $1,000 was sufficient to purchase one pound.  He also testified that the brown paper bag was consistent with marijuana packaging.

[4] The defendant claimed at booking that he was unemployed.

hearing.[5] An engineer for the city of Quincy testified that the parking lot at St. Mary School is part of school property. Weymouth police Detective Robert Gervasi testified as an expert witness on marijuana, cuff sheets, and street level distribution.

Discussion. 1. Motion to suppress. The defendant argues that his motion to suppress should have been allowed because the detectives lacked sufficient justification to stop him and because the stop exceeded the scope of threshold inquiry.[6] When reviewing a motion to suppress, "we adopt the motion judge's factual findings absent clear error." Commonwealth v. Isaiah I., 450 Mass. 818, 821 (2008), citing Commonwealth v. Catanzaro, 441 Mass. 46, 50 (2004). Although we give the facts found by the motion judge deference, we "independently determine whether the judge correctly applied constitutional principles to the facts as found." Ibid. "An investigatory stop of a motor vehicle is appropriate when police have 'a reasonable suspicion, based on specific, articulable facts and reasonable inferences therefrom, that an occupant of the . . . vehicle had committed, was committing, or was about to commit a crime.'" Commonwealth

_____

[5] Detective O'Brien testified at trial that the cuff sheet he found in the defendant's car contained a notation for "Bob" and "1,000" with the number "3,000" crossed out.

[6] The defendant maintains that the stop was the functional equivalent of an arrest and required a showing of probable cause. See note 7, infra.

v. Gorman, 84 Mass. App. Ct. 482, 485 (2013), quoting from Commonwealth v. Alvarado, 423 Mass. 266, 268 (1996). The actions of the police "must be based on specific and articulable facts and reasonable inferences therefrom, in light of the officer's experience." Commonwealth v. Wilson, 441 Mass. 390, 394 (2004). We view the "facts and inferences underlying the officer's suspicion . . . as a whole when assessing the reasonableness of his acts." Commonwealth v. Thibeau, 384 Mass. 762, 764 (1981). "Seemingly innocent activities taken together can give rise to reasonable suspicion justifying a threshold inquiry." Commonwealth v. Watson, 430 Mass. 725, 729 (2000). An inference "need only be reasonable and possible; it need not be necessary or inescapable." Commonwealth v. Beckett, 373 Mass. 329, 341 (1977). However, merely good faith or a hunch is not enough to justify reasonable suspicion. See Commonwealth v. Grandison, 433 Mass. 135, 139 (2001).

The motion judge correctly denied the defendant's motion to suppress. There were sufficient articulable facts and reasonable inferences to justify reasonable suspicion that a crime had been committed. These consist of the following observations by experienced police detectives: Fitzmorris, without any bag, made a telephone call, waited for the defendant to pick him up, and took a short and suspicious drive around the block with the defendant, ending up at Fitzmorris's car about

one hundred yards away from where he was picked up; Fitzmorris left the defendant's car with a bag; Fitzmorris fled the scene when Detective Keenan approached showing his badge; and all of this took place in a high crime area.[7]

While there was sufficient justification for an investigatory stop, we must determine the appropriateness of its scope. The defendant argues that because he was ordered out of the vehicle and handcuffed, the investigatory stop was actually an arrest which necessitated probable cause.

"The officers were permitted to take reasonable measures, such as ordering him out of the vehicle in which he was sitting, to ensure that he did not attempt to escape before they could conduct a threshold inquiry." Commonwealth v. Bostock, 450 Mass. 616, 622 (2008). It was reasonable in the circumstances for Detective O'Brien to order the defendant out of his vehicle

---

[7] Contrary to the defendant's contention, the stop of the defendant's vehicle required only reasonable suspicion, not probable cause. See Commonwealth v. Alvarado, 423 Mass. at 268-269; Commonwealth v. Depiero, 473 Mass. 450, 453-454 (2016); Commonwealth v. Gorman, 84 Mass. App. Ct. at 485. We do not characterize this as a "ride to nowhere" because the short trip had a final destination of Fitzmorris's automobile. While certainly not dispositive of criminal activity, standing alone, Detective Keenan testified to the suspicious nature of the short automobile trip when combined with the other attendant circumstances present here. The detective testified that "they go from the phone call, next the vehicle pulls up -- the person in the vehicle again, that's nothing of itself but when it makes a tiny little trip right around the block, one person gets out and both guys are going their separate way, it just doesn't make sense."

and to handcuff him to prevent him from fleeing.  The defendant had failed to respond to the repeated commands to turn off the engine and looked in all directions suspiciously.[8,9]  See Commonwealth v. Moses, 408 Mass. 136, 143 (1990), quoting from Commonwealth v. Blake, 23 Mass. App. Ct. 456, 460 (1987) ("We think the police could act on a probability that the occupants of the car, conscious of guilt and fearing imminent exposure, would, unless blocked [or otherwise temporarily immobilized], attempt flight, with danger to the public, the police racing in pursuit, and the occupants themselves").  Accordingly, the investigatory stop, as well as the subsequent actions of the detective incident to the stop, were permissible and the motion judge did not err in denying the defendant's motion to suppress.[10]  See Commonwealth v. Knight, 75 Mass. App. Ct. 735,

_____

[8] Also, Detective O'Brien had just observed Fitzmorris flee when Detective Keenan attempted to stop him.

[9] We also note that Detective O'Brien stopped in front of the defendant's vehicle at a red traffic light before he got out of his vehicle to perform the investigatory stop.  This was reasonable in the circumstances because Detective O'Brien was in plain clothes and in an unmarked cruiser.  He approached the defendant's vehicle, on foot, displaying his badge.

[10] Once Detective O'Brien heard on the radio from Detective Keenan that he had recovered approximately one pound of marijuana from Fitzmorris, the reasonable suspicion for an investigatory stop was elevated to probable cause required for a lawful arrest.  "[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an

739 (2009) ("Contrary to the defendant's claim, his arrest was not complete at the point when he was ordered out of the car or even when he was handcuffed").

2. Sufficiency of the evidence. The defendant maintains that the evidence presented at trial was insufficient to convict him of distribution of a class D substance. Specifically, he argues that the evidence presented at trial was as equally compelling that he was the buyer of the marijuana as it was that he was the seller of the marijuana. This would result in making the evidence insufficient to convict him of the distribution charge. The evidence, however, viewed in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 676-677 (1979), only supported the theory that the defendant was the seller. This included: Fitzmorris entering the defendant's vehicle without a brown paper bag and getting out of the vehicle with a brown paper bag (which was later found to contain approximately one pound of marijuana) after a short and suspicious ride around the block; the defendant was found with $1,000 cash in his hand and a cuff sheet next to him, which contained a notation for "Bob" and "1,000" with the number

offense." Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992). The defendant also asserts that the stop of Fitzmorris was illegal and evidence from that stop could not justify his own stop and arrest. However, the defendant, in this case, does not have standing to challenge the stop of Fitzmorris or the seizure of evidence from him. See Commonwealth v. Santiago, 470 Mass. 574, 577-580 (2015).

"3,000" crossed out;[11] as well as additional cash, but no marijuana, found in the defendant's car.  Accordingly, the motion for a required finding of not guilty was properly denied. See ibid.

3.  Ineffective assistance of counsel.  The defendant claims that the trial judge erred in denying the defendant's motion for new trial because his trial counsel deprived him of the effective assistance of counsel.  Specifically, the defendant argues that he would have accepted the Commonwealth's plea offer if he had not been misled by trial counsel's misrepresentations to him.[12]  "We review the judge's denial of the motion for a new trial for 'a significant error of law or other abuse of discretion.'"  Commonwealth v. Forte, 469 Mass. 469, 488 (2014), quoting from Commonwealth v. Grace, 397 Mass. 303, 307 (1986).  The judge who decided the motion for new trial

---

[11] As noted in the text, Fitzmorris's first name is Robert.

[12] We note that the defendant only provided the trial judge with a self-serving affidavit from himself.  Trial counsel did not provide an affidavit to verify the defendant's claims of misrepresentation.  The defendant claims that trial counsel was overly optimistic about the defendant's chances for success at trial.  According to the defendant, trial counsel claimed that even if unsuccessful at trial, the Appeals Court, based on the panel's reaction at a purported oral argument, would "almost certainly" reverse the order denying the motion to suppress, but the panel reserved its decision pending the outcome of the trial.  However, a conforming interlocutory appeal brief was never filed with the Appeals Court and therefore there was no oral argument.

was also the trial judge; his findings, therefore, are entitled to "special deference." Ibid.

In order for a defendant to make a claim of ineffective assistance of counsel in the plea context, the defendant must show "serious incompetency of counsel (behavior falling measurably below that which might be expected from an ordinary fallible lawyer) and prejudice that, in this context, means a 'reasonable probability' that 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Commonwealth v. Mahar, 442 Mass. 11, 15 (2004), quoting from Strickland v. Washington, 466 U.S. 668, 694 (1984). Even assuming, arguendo, that the defendant could show serious incompetency of counsel,[13] he is unable to show that he was prejudiced. In other words, he is unable to show that he would have accepted the plea had counsel not made the errors the defendant claims. At the plea tender, counsel reported that the loss of license was the driving force for the defendant's rejection of the plea offer. Because the loss of license was

---

[13] We note that "the majority of cases in which courts have sustained claims of ineffectiveness of counsel in the context of plea bargaining have been based on the failure of counsel either to communicate the government's plea offer to the defendant, . . . or to explain its implications accurately (including the difference between the sentence recommendation contained in the offer and the maximum sentence that could be imposed on conviction after trial)." Commonwealth v. Mahar, supra at 15-16. The trial judge found neither of these circumstances in the instant case.

present regardless of counsel's alleged misrepresentations, and because counsel accurately communicated the Commonwealth's plea offer to the defendant as well as explained its implications, the defendant has not shown prejudice requiring a new trial.

<u>Judgments affirmed</u>.

<u>Order denying motion for new trial affirmed</u>.