FORD, COMMONWEALTH vs., 100 Mass. App. Ct. 712

 
 COMMONWEALTH vs. LINCOLN FORD.

100 Mass. App. Ct. 712
 October 15, 2021 - February 18, 2022

Court Below: District Court, Chelsea Division
Present: Green, C.J., Singh, & Grant, JJ.

 

Firearms. Threshold Police Inquiry. Search and Seizure, Threshold police inquiry, Reasonable suspicion, Protective frisk. Constitutional Law, Search and seizure, Investigatory stop, Reasonable suspicion. Practice, Criminal, Motion to suppress.

A District Court judge erred in granting a criminal defendant's pretrial motion to suppress a loaded firearm found on his person during an investigatory stop and patfrisk by a police officer, where, at the moment of seizure (i.e., when the officer ordered the defendant to the ground), the officer had reasonable suspicion that the defendant had committed a crime, given information reasonably inferred from a sequence of alerts of possible gunshots fired in a residential neighborhood in the early morning hours, which, in addition to the officer's own hearing of apparent gunshots and the proximity of the defendant, was sufficient to create an individualized suspicion that the defendant was connected to the shots fired [714-718]; further, given these circumstances, the quantum of force employed by the officer was reasonable [718], as was the officer's suspicion that the defendant was armed and dangerous [718-719].

COMPLAINT received and sworn to in the Chelsea Division of the District Court Department on May 6, 2019. 

 A pretrial motion to suppress evidence was heard by D. Dunbar Livingston, J.

 An application for leave to prosecute an interlocutory appeal was allowed by Elspeth B. Cypher, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

 Elisabeth Martino, Assistant District Attorney, for the Commonwealth.

 Matthew Spurlock, Committee for Public Counsel Services, for the defendant.

 Alexa Van Brunt, of Illinois, Jonathan Manes & Tania Brief, of New York, & Christopher T. Bavitz, for Roderick & Solange MacArthur Justice Center & another, amici curiae, submitted a brief.

 Page 713 

 SINGH, J. The defendant was charged with various firearm offenses after an investigatory stop and patfrisk revealed that he was unlawfully carrying a loaded firearm. Following an evidentiary hearing, a District Court judge allowed the defendant's motion to suppress on the ground that the stop was not supported by reasonable suspicion. A single justice of the Supreme Judicial Court granted the Commonwealth leave to file an interlocutory appeal and reported the matter to this court. See Mass. R. Crim. P. 15 (a) (2), as amended, 476 Mass. 1501 (2017). We conclude that, in the circumstances presented by this case, it was reasonable for the officer to conduct an investigatory stop of the defendant. We also conclude that the record contains sufficient evidence to support the patfrisk. Accordingly, we reverse the order allowing the motion. [Note 1]

 Background. [Note 2] On May 5, 2019, at approximately 2:20 a.m., a Chelsea police officer was on uniformed patrol duty, traveling along Central Avenue, when he received a radio dispatch informing him of a ShotSpotter [Note 3] alert in the area of 185 Shurtleff Street. [Note 4] As he was directed to respond, the officer activated his cruiser's blue lights as he drove down Central Avenue. Turning right onto Shurtleff Street, he received two more reports of ShotSpotter alerts, one at 30 Bellingham Street and then another at 70 Bellingham

 Page 714 

 Street. He turned onto Bellingham Street, and as he approached the address where the third ShotSpotter had alerted, he heard "what appear[ed] to be gunshots" himself. Almost simultaneously, dispatch reported a fourth ShotSpotter alert at 92 Bellingham Street. The officer began to "scan" the area for "shooters or victims." The only person that he saw was the defendant, who was standing at the top of the landing at the doorway of 86 Bellingham Street, the building next to and attached to 92 Bellingham Street. [Note 5]

 The officer stopped in the middle of the street and got out of his cruiser. For his safety, because he was investigating possible gunshots, he unholstered his firearm but kept it in the "low, ready position," pointed at the ground. The defendant began to come toward the officer, "stumbling down the steps" from the front door to the street. He appeared to be intoxicated. The officer ordered the defendant to the ground "so [he] could control the scene" until another officer arrived, at which point the defendant was placed in handcuffs. A patfrisk of the defendant uncovered a firearm in his right pocket. 

 Discussion. "When reviewing a ruling on a motion to suppress, we accept the motion judge's findings of fact absent clear error," Commonwealth v. Evelyn, 485 Mass. 691, 696 (2020), but we "conduct an independent review of his ultimate findings and conclusions of law," [Note 6] Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002). "Our duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Scott, 440 Mass. 642, 646 (2004), quoting Commonwealth v. Mercado, 422 Mass. 367, 369 (1996). 

 1. The stop. The parties agree with the judge's finding that the moment of seizure occurred when the officer ordered the defendant to the ground. Accordingly, our analysis begins with the validity of the stop. See Commonwealth v. Warren, 475 Mass. 530, 534 (2016).

 "To justify a police investigatory stop under the Fourth Amendment

 Page 715 

 to the United States Constitution or art. 14 of the Massachusetts Declaration of Rights, 'the police must have "reasonable suspicion" that the person has committed, is committing, or is about to commit a crime.'" Commonwealth v. Vick, 90 Mass. App. Ct. 622, 625 (2016), quoting Commonwealth v. Costa, 448 Mass. 510, 514 (2007). Reasonable "suspicion must be grounded in 'specific, articulable facts and reasonable inferences [drawn] therefrom' rather than on a 'hunch.'" Commonwealth v. Meneus, 476 Mass. 231, 235 (2017), quoting Commonwealth v. DePeiza, 449 Mass. 367, 371 (2007). It "is measured by an objective standard, and the totality of the facts on which the seizure is based must establish 'an individualized suspicion that the person seized by the police is the perpetrator' of the crime under investigation" (citation omitted). Meneus, supra, quoting Warren, 475 Mass. at 534.

 The judge concluded that the officer did not have reasonable suspicion to stop the defendant, reasoning:

"The [ShotSpotter] alert system lacks reliability both in determining that a shot has been fired and where it has been fired. The [ShotSpotter] alert does little more than point the police in the right direction to investigate the possibility of a shot being fired, the ensuing investigation possibly establishing reasonable suspicion or probable cause that a crime has occurred. Thus, the [ShotSpotter] alert standing alone or in combination with a police investigation does little to support reasonable suspicion. It is the police investigation as a result of a [ShotSpotter] alert that is primarily determinative on the issue of reasonable suspicion." 

Consequently, the judge, in his reasonable suspicion calculus, considered only the information known to the officer beginning from the time at which the officer first encountered the defendant. Because the officer did not testify as to conduct that suggested that the defendant was "involved in the shots fired incident," and because the officer had not received a witness description of the perpetrator, the judge determined that the officer did not have "reasonable suspicion" to believe the defendant was committing, had committed, or was about to commit a crime. 

 The defendant maintains that the judge "properly discounted the ShotSpotter alerts" because the officer's testimony did not 

 Page 716 

prove that a ShotSpotter alert is "reliable"; [Note 7] that is, that a single ShotSpotter alert is conclusive as to the presence of gunfire. [Note 8] The defendant's argument fails to recognize that although a fact known to an officer might not suggest criminal activity standing alone, multiple innocuous facts may in the aggregate give rise to reasonable suspicion. Cf. Commonwealth v. Watson, 430 Mass. 725, 729 (2000) ("Seemingly innocent activities taken together can give rise to reasonable suspicion justifying a threshold inquiry"). The defendant's position -- that reports of a series of ShotSpotter alerts should carry equal weight in the reasonable suspicion calculus as the report of a single alert -- is inconsistent with the basic principle that a court considers the totality of the circumstances when assessing reasonable suspicion. See Meneus, 476 Mass. at 236. 

 Here, the officer began driving toward 185 Shurtleff Street following an alert from a ShotSpotter device located at or near that address. The officer understood that even though the ShotSpotter device may have been activated by something harmless, he had a responsibility to investigate the possibility that someone was discharging a firearm in a residential neighborhood. See, e.g., Commonwealth v. Dasilva, 66 Mass. App. Ct. 556, 559 (2006) ("Police officers have a duty to investigate citizen reports of criminal activity, particularly if the conduct implicates the safety of the public" [citation omitted]). It may well be, as the

 Page 717 

 judge stated, that when the officer first initiated his investigation, the initial ShotSpotter "alert [did] little more than point the police in the right direction to investigate the possibility of a shot being fired." 

 The timing and location of the alerts that followed, however, also should have been considered in evaluating the lawfulness of the officer's conduct. The ShotSpotter alerted in the early hours of the morning in a residential area. Each successive report of a ShotSpotter alert, combined with the officer's own hearing of apparent gunshots, made it increasingly reasonable for the officer to infer that the ShotSpotter devices were activating in response to consecutive gunshots. These factors, taken together, supported a reasonable inference that a crime was being committed, namely the discharge of a firearm within 500 feet of a dwelling. See G. L. c. 269, § 12E. Most significantly, the reports of the second, third, and fourth ShotSpotter alerts indicated a specific linear trajectory that began at the intersection of Shurtleff and Bellingham Streets and continued along Bellingham Street. Contrast Commonwealth v. Torres, 424 Mass. 153, 161 (1997), quoting Commonwealth v. Bartlett, 41 Mass. App. Ct. 468, 472 (1996) (tallying up multiple "innocuous observations . . . does not produce" reasonable suspicion). The ShotSpotter alerts created an acoustic trail of breadcrumbs, from which it was reasonable to infer that the person responsible for the potential gunshots would be at or near the location where the ShotSpotter had last activated. 

 Once the information reasonably inferred from the sequence of ShotSpotter alerts is considered in the holistic analysis, the remainder of the judge's factual findings take on greater significance. "The seizure of a suspect in geographical and temporal proximity to the scene of the crime appropriately may be considered as a factor in the reasonable suspicion analysis." Meneus, 476 Mass. at 240. It is particularly relevant where, as here, the officer encountered the defendant less than a minute after the last reported ShotSpotter alert, at the location where the trail of ShotSpotter alerts ended. Contrast Commonwealth v. Jones, 95 Mass. App. Ct. 641, 647 (2019) (proximity of stop to crime less meaningful where, for example, officer sought out "defendant on [a specific street] because he knew it was near the defendant's home, not because it was near the shooting"). Finally, the officer was scanning the street for potential involved parties, and the defendant was the only person that the officer saw. Cf. Commonwealth v. Privette, 100 Mass. App. Ct. 222, 229-231 (2021) (fact 

 Page 718 

that defendant was only pedestrian on street late at night near scene of crime supported reasonable suspicion). Contrary to the defendant's contention, these facts were sufficient to create "an individualized suspicion" that the defendant was connected to the shots fired. Meneus, supra at 235, quoting Warren, 475 Mass. at 534. 

 2. Disproportionate force. The defendant argues, in the alternative, that the quantum of force employed by the officer escalated the stop into an arrest without probable cause. We disagree. "[P]olice officers conducting a threshold inquiry may take reasonable precautions, including drawing their weapons, when the circumstances give rise to legitimate safety concerns." Commonwealth v. Haskell, 438 Mass. 790, 794 (2003). See Commonwealth v. McKoy, 83 Mass. App. Ct. 309, 313 (2013) ("the pertinent inquiry is whether the degree of intrusion is reasonable in the circumstances" [citation omitted]). While it is true that "without the presence of other fear-provoking circumstances," Commonwealth v. Bottari, 395 Mass. 777, 782 (1985), the suspected presence of a firearm alone may not justify the police in drawing their weapons, here the officer had a reasonable belief that, just moments before he encountered the defendant, a person had fired multiple gunshots in a residential neighborhood in the early hours of the morning. Ordering the defendant to the ground until additional officers arrived was reasonable in light of the threat to the safety of the public and to the officer. Where "the police are acting in a swiftly developing situation, . . . the court should not indulge in unrealistic second-guessing." Commonwealth v. Sinforoso, 434 Mass. 320, 325 (2001), quoting United States v. Sharpe, 470 U.S. 675, 686 (1985). 

 3. The patfrisk. The judge did not reach the issue of the lawfulness of the patfrisk, although it was raised in the defendant's motion to suppress, because the judge concluded that the investigatory stop was improper. The question whether an officer has a "reasonable suspicion, based on specific articulable facts, that the suspect is armed and dangerous" is a question of law. Commonwealth v. Torres-Pagan, 484 Mass. 34, 39 (2020). See Commonwealth v. Jones-Pannell, 472 Mass. 429, 433-434 (2015) ("The legal question then becomes whether, at the time the defendant was seized, the officers had an objectively reasonable suspicion of criminal activity, based on specific and articulable facts" [quotation and citation omitted]). Because the subsidiary findings of fact are uncontroverted in this case, it is also a 

 Page 719 

question that we can answer in the first instance. Contrast Jones-Pannell, supra at 438 (appellate court may not engage in independent fact finding to reach conclusion of law contrary to that of motion judge). 

 This case presents the circumstance in which "[t]he same factors that supported reasonable suspicion for the stop supported the officer's suspicion that [the defendant] was armed and dangerous." Commonwealth v. Henley, 488 Mass. 95, 105 (2021). See Commonwealth v. Narcisse, 457 Mass. 1, 9 (2010) (reasonable suspicion to conduct investigatory stop "may occur simultaneously" with reasonable suspicion to conduct patfrisk). Because we conclude that the officer had reasonable suspicion to believe that the defendant had just repeatedly discharged a firearm in a residential neighborhood, it was also reasonable for the officer to believe that the defendant was armed with the instrumentality of that crime at that time. See id. at 10 n.7. See also Commonwealth v. Gomes, 458 Mass. 1017, 1019 (2010) (recognizing imminent danger caused by unlawful use of firearm).

 Conclusion. We reverse the order allowing the defendant's motion to suppress. 

 So ordered. 

FOOTNOTES
[Note 1] We acknowledge the amicus brief submitted by the Roderick & Solange MacArthur Justice Center at Northwestern Pritzker School of Law and the Innocence Project, Inc., in support of the defendant. The amici urge that we use this case to announce that the technology and methodology underlying a ShotSpotter alert lack scientific reliability, and that we disclaim the relevance of ShotSpotter alerts in determining whether an investigatory stop was supported by reasonable suspicion. For the reasons stated infra, we decline the request in the circumstances of this case. 

[Note 2] "We recite the facts found or implicitly credited by the motion judge, supplemented by additional undisputed facts where they do not detract from the judge's ultimate findings." Commonwealth v. Kaplan, 97 Mass. App. Ct. 540, 541 n.3 (2020), quoting Commonwealth v. Jessup, 471 Mass. 121, 127-128 (2015). 

[Note 3] At the hearing, the officer described ShotSpotter devices as "pretty much like satellites located around the city" that "activate based on sound." According to the officer, "when they activate, they give a general area of where the possible gunshot took place." See Commonwealth v. Watson, 487 Mass. 156, 157 n.2 (2021) ("ShotSpotter uses sensors to detect a possible gunshot and approximates its location"). 

[Note 4] Although the judge referred to 185 Bellingham Street, the record supports the location as being 185 Shurtleff Street, which is on the corner of Bellingham Street. 

[Note 5] The officer encountered the defendant approximately three minutes after receiving the initial radio dispatch. 

[Note 6] Neither party claims that any of the judge's subsidiary findings of fact are clearly erroneous. Rather, the Commonwealth's "issue" with the judge's finding that the ShotSpotter "system lacks reliability" in identifying gunshots is a quarrel with the judge's ultimate findings, which we review de novo. See Commonwealth v. Barillas, 484 Mass. 250, 253 (2020). 

[Note 7] To the extent that the judge was referring to scientific reliability, we note that the defendant did not request a hearing to test the scientific reliability of ShotSpotter. See Ernest E. v. Commonwealth, 486 Mass. 183, 189 n.9, 190-191 (2020) (appellate court unable to review issue dependent upon scientific reliability where no hearing held pursuant to Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593-595 [1993], and Commonwealth v. Lanigan, 419 Mass. 15, 25-26 [1994]). Neither did the defendant's motion squarely raise the scientific reliability of the ShotSpotter system; it stated only that the stop of the defendant was unjustified because, aside from "reports . . . generated by a device/system known as 'ShotSpotter[,]' [t]he police had no other information" linking the defendant to criminal activity. 

[Note 8] The officer who testified at the hearing explained that, although he was "not familiar with the actual device," he had responded to ShotSpotter alerts before. He acknowledged that, in addition to gunfire, the alerts could pick up similar sounds, like fireworks or a car backfiring. He indicated that, just as when people called in to report possible gunshots, police had to respond to ShotSpotter alerts "to make sure it is or it isn't actual gunshot." As the officer's testimony showed, the Commonwealth's reasonable suspicion argument did not depend on ShotSpotter's reliability as an indicator of "actual" gunshots, but merely as an indicator of "potential" gunshots, i.e., noises that could be gunshots. The defendant did not challenge the reliability of ShotSpotter in this sense. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.