NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-696

COMMONWEALTH

vs.

KENNETH FLOHR.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Kenneth Flohr, was charged in the District Court with possession with intent to distribute a class A substance and illegal possession of ammunition. The defendant filed a motion to suppress evidence obtained from the stop of the motor vehicle in which he was a passenger. Following an evidentiary hearing, a District Court judge determined that the police officers involved in the matter did not have reasonable suspicion to justify the stop. The Commonwealth obtained leave to file an interlocutory appeal. See Mass. R. Crim. P. 15 (a) (2), as amended, 476 Mass. 1501 (2017). We reverse.

Background. We summarize the facts as found by the motion judge, supplemented with uncontested evidence from the record. See Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).

On February 3, 2022, Detective Robert Bruner of the Street

Narcotics Enforcement Unit (SNEU) observed a truck with two occupants and Maine license plates traveling South on Broadway Street in Lawrence around 3 P.M. After running a registry query, he discovered that the truck's owner lived an hour and one-half away. The truck pulled over to the side of the road and remained there for approximately thirty-five minutes. Then the truck traveled to a Dunkin' Donuts, "[w]ent through the drive-thru," and parked for another twenty minutes. The truck then became mobile again and traveled a short distance to a side road, where it pulled over and parked.

After approximately ten minutes, the defendant, who was unknown to the officers, got out of the passenger side of the truck and walked away from it. A taxicab then drove up and parked in front of the truck. A male subject exited the cab (cab passenger), walked away from it, and stopped in a nearby residential driveway. The defendant walked back to the truck and stopped at the driver's side. From about 300 to 400 feet away, Detective Bruner watched the defendant and the driver of the truck appear to exchange something.

Next, the defendant walked away from the truck. As he did so, he was "looking down at and manipulating his cellphone." At the same time, the cab passenger was "looking at and . . . manipulating his cellphone." The defendant and the cab passenger then appeared to acknowledge each other's presence,

2

both walked toward the truck, and stopped in front of it.  From about thirty to thirty-five feet away, Detective Jordany Vargas, also of the SNEU, observed the defendant and the cab passenger appear to exchange something.  While "he could not see anything 'physically exchanged,'" Detective Vargas testified that he "could see their hands touch."  The defendant then got back into the truck and left the scene.  The officers believed that they had observed a drug transaction, and thus initiated a motor vehicle stop of the truck and recovered contraband in connection with the stop.

Discussion.  "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings absent clear error but conduct an independent review of [the] ultimate findings and conclusions of law" (quotation and citation omitted).  Jones-Pannell, 472 Mass. at 431.  Although we give the facts found by the judge deference, we "independently determine whether the judge correctly applied constitutional principles to the facts as found."  Commonwealth v. Isaiah I., 450 Mass. 818, 821 (2008).

In the present case, the sole question before us is whether, at the time of the stop, there was reasonable suspicion that the defendant "was committing, had committed, or was about to commit a crime."  Commonwealth v. Chin-Clarke, 97 Mass. App. Ct. 604, 608 (2020), quoting Commonwealth v. Matta, 483 Mass.

3

357, 365 (2019). In determining whether reasonable suspicion exists, we consider "the whole 'silent movie' disclosed to the eyes of an experienced narcotics investigator." Commonwealth v. Santaliz, 413 Mass. 238, 242 (1992). Reasonable suspicion must be based on "specific, articulable facts and reasonable inferences [drawn] therefrom" (citation omitted). Commonwealth v. DePeiza, 449 Mass. 367, 371 (2007). "[A] combination of factors that are each innocent of themselves may, when taken together, amount to the requisite reasonable belief."[1] Commonwealth v. Phillips, 452 Mass. 617, 626 (2008), quoting Commonwealth v. Fraser, 410 Mass. 541, 545 (1991).

The facts here, taken together, gave the detectives reasonable suspicion to believe that the defendant had engaged in criminal activity. Specifically, as found by the judge, Detectives Bruner and Vargas are experienced narcotics investigators. Detective Bruner had been a member of the Lawrence Police Department for eight years, a detective in the

---

[1] In allowing the defendant's motion to suppress, the judge stated that "[w]hat is missing is that one 'plus' factor that would elevate this suspicious conduct into the realm of reasonable suspicion." The judge cites no authority to support the proposition that a "plus factor" is required to find reasonable suspicion in this analysis. Under our precedent, we consider the facts in their totality, without recognizing any single factor as determinative or dispositive, or requiring any "plus factor." See Commonwealth v. Ford, 100 Mass. App. Ct. 712, 716 (2022) (stating "the basic principle that a court considers the totality of the circumstances when assessing reasonable suspicion").

SNEU for two and one-half years, and had made "hundreds of narcotics arrests," and while Detective Vargas had been with the department for six and one-half years, a detective in the SNEU for two years, and had been involved in "over a hundred" narcotics investigations and arrests. See Commonwealth v. Santa Maria, 97 Mass. App. Ct. 490, 494 (2020); Santaliz, 413 Mass. at 241. The truck in which the defendant was a passenger had an out-of-State license plate[2] and had traveled to an area in which both detectives "had made a number of narcotics related arrests." See Commonwealth v. Evelyn, 485 Mass. 691, 709 (2020) ("high crime" area factor may be considered where "high crime" nature of area has a "direct connection with the specific location and activity being investigated" [citation omitted]).

Furthermore, the truck in the present case drove around a small geographic area for approximately an hour in a manner consistent with a planned meeting. See Alvarado, 93 Mass. App. Ct. at 471 (observation of suspiciously short drive after which

_____

[2] The defendant argues that his "presence in Lawrence from Maine deserves no weight because the officers offered minimal concrete testimony of how frequent drug transactions stem from Maine visitors" and consideration of this factor would "penalize [the defendant] for exercising his fundamental right to travel." Were we to view this factor in isolation, we might agree. However, our case law holds that, when accompanied by other evidence of a drug transaction, an out-of-State vehicle in an area known for drug activity may be considered in the totality of circumstances analysis. See, e.g., Commonwealth v. Alvarado, 93 Mass. App. Ct. 469, 471 (2018); Commonwealth v. Cabrera, 76 Mass. App. Ct. 341, 346 (2010).

5

one person exits car may be considered as circumstantial evidence in context of drug sale investigation); Commonwealth v. St. George, 89 Mass. App. Ct. 764, 767-768, 768 n.7 (2016) ("short trip," while "not dispositive of criminal activity, standing alone" was of "suspicious nature . . . when combined with the other attendant circumstances present"). While the truck's strange driving and parking pattern alone "is not dispositive of criminal activity," in the totality of the circumstances it can be indicative of a drug transaction. Id. at 768 n.7.

Most importantly, the defendant engaged in an unusual transaction suggestive of criminal behavior. See Santaliz, 413 Mass. at 241 ("the unusual nature of the transaction . . . [and] the furtive actions of the participants" indicate that defendant was committing crime). Here, the defendant, after having been inside the parked truck for ten minutes on a side road, exited the passenger's side of the truck and began to walk away from it; a cab then parked in front of the truck; the cab passenger exited the cab, walked away, and stopped in a residential driveway; the defendant walked back to the truck, stopped at the driver's side, and exchanged something with the driver of the truck; the defendant "then walked away from the truck again and was looking down at and manipulating his cellphone" while, "[a]t the same time," the cab passenger was looking at and

manipulating his cellphone; the defendant and cab passenger then acknowledged each other's presence, moved toward each other, walked toward the truck, stopped in front of it, touched hands, and appeared to be exchanging something. The defendant then re-entered the truck which left the scene. "[T]he quickness of the interaction . . . reasonably could be interpreted by the officer[s] as suspicious conduct" (citation omitted).[3] Santa Maria, 97 Mass. App. Ct. at 495. See Alvarado, 93 Mass. App. Ct. at 471 (noting that "the brevity of the interaction between the defendant and the vehicle's driver" was, among other facts, a factor that "pointed to a drug transaction").

While it is conceivable that the defendant and cab passenger could have been engaging in lawful activity, the detectives' aforementioned observations, combined with their experience, training, knowledge of incidents in the area, and all the other factors and indicia discussed herein, provided more than enough specific articulable facts to satisfy the

---

[3] The defendant contends that his actions were not "furtive" because they were not done "in stealth or secrecy," as they occurred during the day and the officers were able to observe all his movements. See Commonwealth v. Torres-Pagan, 484 Mass. 34, 39-40 (2020). This contention is unavailing. When considered with the other evidence of suspicious behavior here, the brevity and hurried nature of the exchange suggests that the transaction was intended to be done in stealth. Furthermore, the defendant cites no authority indicating that an action cannot be "furtive" if it is conducted during the day or in the presence of others.

reasonable suspicion standard.  See Terry v. Ohio, 392 U.S. 1, 22 (1968) (threshold inquiry proper where "a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation").[4]  Accordingly, the motor vehicle stop was constitutionally permissible.

Order allowing motion to suppress reversed.

By the Court (Neyman, Hershfang & Hodgens, JJ.[5]),

<em>Paul Little</em>

Clerk

Entered:  July 31, 2024.

---

[4] We are not persuaded by the defendant's contention that the absence of testimony that the detectives observed an actual object being exchanged "detracts from any conclusion that a drug transaction occurred."  See Santa Maria, 97 Mass. App. Ct. at 494 ("given the easily-concealed nature of small packages of drugs, an officer need not actually see an object exchanged in order to have probable cause," or in the same vein, reasonable suspicion); Commonwealth v. Sanders, 90 Mass. App. Ct. 660, 667 (2016) ("there are a myriad of factual scenarios in which such an inference [of a drug transaction] is reasonable despite the absence of any direct observation of an exchange").

[5] The panelists are listed in order of seniority.