NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-635

COMMONWEALTH

vs.

LUIS MATOS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Luis Matos, appeals from his conviction of carrying a loaded firearm without a license in violation of G. L. c. 269, § 10 (n), and carrying a firearm without a license in violation of G. L. c. 269, § 10 (a).  The convictions resulted from a stop of the defendant's vehicle by a Lowell police detective, who then discovered a loaded gun under the defendant's seat and learned that the defendant did not possess a license to carry.[1]  The defendant filed a motion to suppress evidence seized as a result of the vehicle stop, claiming that

_____

[1] The defendant was also charged with the offense of discharging a firearm within five hundred feet of a building in violation of G. L. c. 269, § 12E, which the trial court dismissed at the request of the Commonwealth.

the stop, subsequent exit order, and search of the vehicle were unconstitutional. A District Court judge denied the defendant's motion to suppress, and the case proceeded to trial. The defendant now appeals his convictions, arguing anew that there was neither reasonable suspicion nor reasonable safety concerns to justify the stop, exit order, and search. We disagree and accordingly, affirm.

Background. 1. The incident. On the night of December 6, 2018, Lowell Police Detective Steven Dalessandro was surveilling two 7-Eleven convenience stores in Lowell following a series of armed robberies in the area, the most recent of which had taken place the previous day. Dalessandro positioned his vehicle near one of the 7-Elevens, a location on Princeton Boulevard. Sometime after midnight, Dalessandro observed a black BMW pull into the parking lot of the 7-Eleven and watched as an individual inside the store leaned over the counter as if he was reaching for something. The individual then left the store and entered the BMW, which thereafter pulled out of the parking lot and onto Princeton Boulevard. Dalessandro followed the BMW down Princeton Boulevard until it turned right onto Dingwell Street. Dalessandro remained on Princeton Boulevard near the intersection with Dingwell Street, believing that Dingwell Street was a dead-end. He observed no other traffic in the area.

Less than thirty seconds later, Dalessandro heard what he believed to be a single gunshot. Dalessandro was familiar with the sound of a gunshot through his duties as a police officer. Indeed, he had heard a gun fire "thousands of times." Within seconds of the sound, the BMW drove back onto Princeton Boulevard and turned in the direction of the 7-Eleven. Dalessandro followed the BMW and observed it take a "sharp" and "unsafe" turn into a parking lot off Princeton Boulevard, at which point Dalessandro followed the BMW into the lot and initiated a stop by turning on his police cruiser lights. Two passengers in the BMW then began to exit the car, one from the front seat and one from the back seat. Using his public address (PA) system, Dalessandro asked the two individuals to remain in the BMW and they complied.

Dalessandro called for backup and approached the driver's side of the BMW. He recognized a passenger in the back seat, a person Dalessandro had previously arrested for a firearms offense. Dalessandro asked the driver -- later identified as the defendant -- to step out of the BMW and conducted a pat frisk of his person. Dalessandro then searched the area around the driver's seat and discovered a gun on the floor halfway underneath the seat. Dalessandro found that the gun was loaded with one round in the chamber and three rounds in the magazine, all of which were marked with the letters "FC." Sergeant Joseph

Murray arrived as backup and asked the defendant to produce his license to carry the firearm. The defendant responded that he did not have a license and the officers subsequently placed him under arrest. Detective Dalessandro and Sergeant Murray then returned to Dingwell Street, and discovered a shell casing marked with the letters "FC" on an adjacent street.

2. <u>The motion to suppress</u>. In March of 2019, the defendant filed a motion to suppress evidence seized as a result of the stop, which the defendant argued violated both the Federal Constitution and art. 14 of the Massachusetts Constitution. After an evidentiary hearing, a District Court judge denied the motion, concluding that there was a sufficient basis for Dalessandro to stop the BMW once he heard the gunshot and observed the BMW exit Dingwell Street seconds thereafter. The judge noted that the stop, exit order, and search of the vehicle were also justified because the circumstances of the incident gave rise to officer safety concerns.[2]

The defendant was tried, jury waived, in September of 2021. The District Court judge found the defendant guilty of carrying

---

[2] The defendant filed a second motion to suppress in October of 2020, challenging a statement he made to the police. After an evidentiary hearing, that motion was denied. The outcome of the motion to suppress the defendant's statement is not at issue in this appeal.

a loaded firearm without a license and carrying a firearm without a license.  The defendant timely appealed.

Discussion.  The defendant challenges the denial of his motion to suppress, contending that detective Dalessandro lacked reasonable suspicion to justify the stop of the BMW, the exit order, and the search of the vehicle for weapons.[3]  The defendant makes several arguments, including (1) that Dalessandro did not have reasonable suspicion that a shooting had occurred based on "a singular sound at an unspecified distance that . . . [he] merely 'thought' was a gunshot," (2) that even if a gun had been fired, Dalessandro had no reason to suspect that any occupant of the BMW was involved, (3) that the motion judge's finding that Dalessandro issued the exit order after recognizing a passenger in the BWM with a pending firearms charge was clearly erroneous, and (4) that Dalessandro's knowledge of a passenger's criminal record could not support reasonable suspicion that the defendant was armed and dangerous.

---

[3] Both the defendant and the Commonwealth briefed the additional issue of whether the defendant's convictions for carrying a firearm without a license and carrying a loaded firearm without a license violated the Second Amendment of the United States Constitution, in light of the United States Supreme Court's decision in New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022).  However, the parties submitted a joint status report agreeing to proceed only on the motion to suppress arguments in light of the Supreme Judicial Court's decisions in Commonwealth v. Guardado, 491 Mass. 666 (Guardado I), S.C., 493 Mass. 1 (2023) (Guardado II).

"In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [the judge's] ultimate findings and conclusions of law.'" Commonwealth v. Scott, 440 Mass. 642, 646 (2004), quoting Commonwealth v. Jimenez, 438 Mass. 213, 218 (2002). We "leave to the [motion] judge the responsibility of determining the weight and credibility to be given . . . testimony presented at the motion hearing." Commonwealth v. Meneus, 476 Mass. 231, 234 (2017), quoting Commonwealth v. Wilson, 441 Mass. 390, 393 (2004). However, we "make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Mercado, 422 Mass. 367, 369 (1996).

Both the Fourth Amendment and art. 14 dictate that a police officer may effect a stop and conduct a threshold inquiry where they have "reasonable . . . suspicion that a person has committed, is committing, or is about to commit a crime." Commonwealth v. Bostock, 450 Mass. 616, 619 (2008). See Commonwealth v. Martin, 467 Mass. 291, 303 (2014). Such suspicion must be "'based on specific, articulable facts and reasonable inferences therefrom' rather than on a 'hunch.'" Commonwealth v. Lyons, 409 Mass. 16, 19 (1990), quoting Commonwealth v. Wren, 391 Mass. 705, 707 (1984). Reasonable suspicion "is measured by an objective standard, . . . and the

6

totality of the facts on which the seizure is based must establish 'an individualized suspicion that the person seized by the police is the perpetrator' of the crime." Meneus, 476 Mass. at 235, quoting Commonwealth v. Warren, 475 Mass. 530, 534 (2016).

1. The stop. The defendant argues that "a singular sound at an unspecified distance that Det. Dalessandro merely 'thought' was a gunshot" did not provide reasonable suspicion for Dalessandro to stop the BMW. This contention ignores the factual context in which Dalessandro was acting, including his prior surveillance and the reasons for it, and also minimizes the significance of an experienced detective hearing what he believed to be gunfire. Those facts, considered in toto, created reasonable suspicion to stop the defendant's vehicle.

Beginning with the context, on the night in question Dalessandro was positioned in the area because armed robberies had taken place in convenience stores in the city. He had just watched the defendant's car pull into a 7-Eleven parking lot and an individual inside the store lean over the counter (doing something Dalessandro was too far away to identify), and then exit the store and enter the BMW shortly before it drove away. It was reasonable, under the circumstances, for Dalessandro to be focused on the car as a possible source of criminal activity. See Meneus, 476 Mass. at 238 (character of area as "high crime"

may be considered in reasonable suspicion analysis where inferences fairly drawn from that characterization demonstrate reasonableness of stop).

The actions at the 7-Eleven were followed by (1) the car turning down what Dalessandro believed was a dead-end street, (2) within seconds, the sound of a gunshot, and (3) again within seconds, the car returning and turning quickly into a parking area.  It was late at night, there were no other cars around, and Dalessandro was experienced with firearms and the sound of gunshots.  Under the circumstances, Dalessandro had reasonable suspicion that someone in the car had just fired a gun in a residential neighborhood.  See Commonwealth v. Perez, 80 Mass. App. Ct. 271, 278 (2011), quoting Commonwealth v. Depina, 456 Mass. 238, 246-247 (2010), and Commonwealth v. Mubdi, 456 Mass. 385, 398 (2010) (courts may consider "'[t]he gravity of the crime and the present danger of the circumstances'" in assessing reasonable suspicion, including "the 'imminent threat' posed by gunshots fired in a residential neighborhood").

Citing Commonwealth v. Ford, 100 Mass. App. Ct. 712, 716-717 & n.8 (2022), the defendant argues that Dalessandro could have mistaken the sound of fireworks or a car backfiring for a gunshot.  Ford is plainly distinguishable, however; it involved a police officer's response to a ShotSpotter alert of gunfire, which the police acknowledged is a tool that could mistake a

8

similar noise for gunfire.  Id. at 716 n.8.  Here Dalessandro did not rely on any intermediary tool in surmising that a gun had been fired; he heard the sound of the gunshot himself.

Citing Meneus, 476 Mass. at 236, the defendant also attacks the strength of Dalessandro's inference that the gunfire was linked to occupants of the BMW.  We are similarly unpersuaded.  In Meneus, the court concluded there was no reasonable suspicion to stop the defendant where there was no confirmation that the group he was with was the same group that reportedly fled the location of shots fired, and where the woman who reported the shots to the police had not indicated that the group was involved in the shooting in the first place.  Id. at 232-233, 236.  Here, not only did Dalessandro observe the BMW travelling toward the location of the gunshot and reemerge from that location only seconds after the gun was fired, but he also observed no other traffic in the area.  See Commonwealth v. Ling, 370 Mass. 238, 241 (1976) (reasonable suspicion where, among other indicia, the only person observed in the area was the defendant leaving the scene of a reported break-in); Commonwealth v. Bannister, 94 Mass. App. Ct. 815, 819-820 (2019) (reasonable suspicion where the defendant and co-felon were the only individuals fleeing the scene of a shooting).  We discern no error in the motion judge's conclusion that there was reasonable suspicion for the stop.

2. The exit order. The exit order was similarly justified by the reasonable suspicion that the occupants of the BMW had, mere minutes prior, fired a gun in a residential area, giving rise to a reasonable concern for Dalessandro's safety. Commonwealth v. Stampley, 437 Mass. 323, 328 (2002) ("[t]he justification for an exit order does not depend on the presence of an 'immediate threat' at the precise moment of the order, but rather on the safety concerns raised by the entire circumstances of the encounter"). Moreover, at the time Dalessandro issued the exit order, reasonable suspicion and concerns for his safety had been bolstered by additional factors, including that two passengers initially had exited the vehicle unsolicited and Dalessandro was alone and outnumbered. Although the defendant takes issue with the motion judge's finding that Dalessandro first recognized the passenger with the pending charge and then issued the exit order, we think the order of things matters little under the circumstances. Dalessandro had reasonable suspicion that someone in the car had fired a gun a few minutes before. He had grounds for the exit order regardless of exactly when he identified the passenger with the firearms charge.

3. Search of the vehicle. Finally, the defendant argues that Detective Dalessandro's limited sweep of the vehicle for weapons was similarly unsupported by reasonable suspicion. For

10

the reasons discussed above, we do not agree.[4]  Dalessandro acted reasonably under the circumstances.

Judgments affirmed.

By the Court (Milkey, Shin & Englander, JJ.[5]),

*Paul Little*

Clerk

Entered:  August 14, 2024.

---

[4] The defendant argues that the patfrisk of his person was not supported by reasonable suspicion that he was armed and dangerous.  Since the patfrisk yielded no evidence for the defendant to later suppress, we need not address this issue.

[5] The panelists are listed in order of seniority.