NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1023

COMMONWEALTH

vs.

JARED J., a juvenile.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following the denial of a motion to suppress, the juvenile entered a conditional guilty plea on one count of discharging a firearm within 500 feet of a building, in violation of see G. L. c. 269, § 12E, and one count of possession of ammunition without a firearm identification (FID) card, in violation of G. L. c. 269, § 10 (h) (1).[1]  The juvenile argues that the judge erroneously denied the motion to suppress because the evidence in question was obtained as a result of an unconstitutional seizure and patfrisk.  We affirm.

_____

[1] The parties agreed that the juvenile reserved his right to appeal from the denial of the motion to suppress.  See Mass. R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019); Commonwealth v. Gomez, 480 Mass. 240, 252-253 (2018).

Background.  We summarize the facts as found by the motion judge, supplemented with the uncontroverted testimony of the hearing witnesses.  See Commonwealth v. Tremblay, 480 Mass. 645, 655 (2018).  In the afternoon of April 3, 2022, New Bedford police Officer Scott DeCosta received a "ShotSpotter" alert while on routine patrol.[2]  The alert stated that five possible gunshots were fired in an area of New Bedford near a medical facility.  As Officer DeCosta responded to the area of the alert, he noticed three young men, each wearing black clothing, crossing the street and moving away from a cemetery.  DeCosta then spoke with a roofer working on a roof nearby who said he heard five gunshots and saw three males in the cemetery, masked and all wearing black, running toward the street where DeCosta had noticed the young men.

DeCosta continued patrolling until he saw the juvenile walking, recognizing him as one of the three persons he had seen near the location of the alert.  DeCosta could not see the juvenile's hands, and, as DeCosta exited his marked police car, he asked the juvenile to show his hands.  The juvenile looked surprised and began running in the opposite direction.  DeCosta

_____

[2] ShotSpotter is "a system that identifies firearm discharges by sound and directs officers to the general location of the shots."  Commonwealth v. Evelyn, 485 Mass. 691, 694 (2020).

called in the juvenile's flight on his police radio.  Another officer, also in the area to investigate the ShotSpotter alert, heard DeCosta's radio call and saw someone duck under a van. DeCosta arrived on the scene, and the two officers surrounded the van.  With his gun drawn, the second officer ordered the person under the van to come out.  When the juvenile emerged from under the van, the officer lifted him up from the ground, feeling a hard object in his pocket.  DeCosta handcuffed the juvenile, and the second officer removed the hard object, which turned out to be a revolver wrapped in an article of clothing. Shortly thereafter, DeCosta felt another hard object in the juvenile's pocket and removed a sandwich bag containing ammunition.

Discussion.  1.  Standard of review.  "When reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of his ultimate findings and conclusions of law" (quotation omitted).  Commonwealth v. Hobbs, 482 Mass. 538, 543 (2019), quoting Commonwealth v. White, 475 Mass. 583, 587 (2016).  The juvenile claims error in the judge's conclusion that the officer had reasonable suspicion to stop him and that he was armed and dangerous.  We take each issue in turn.

3

2.  Reasonable suspicion to conduct a stop.  The parties agree that the juvenile was seized for purposes of Article 14 of the Massachusetts Declaration of Rights when DeCosta asked him to show his hands.  Thus, we must determine if police had reasonable suspicion that the juvenile "'was committing, had committed, or was about to commit a crime' at the time of the seizure."  Commonwealth v. Matta, 483 Mass. 357, 365 (2019), quoting Commonwealth v. Martin, 467 Mass. 291, 303 (2014).  "Reasonable suspicion must be grounded in specific, articulable facts and reasonable inferences [drawn] therefrom rather than on a 'hunch'" (quotations and citation omitted).  Matta, supra.  Reasonable suspicion is measured by an objective standard, and the totality of the facts on which the seizure is based must establish "an individualized suspicion that the person seized by the police is the perpetrator of the crime under investigation" (quotation and citation omitted).  Commonwealth v. Meneus, 476 Mass. 231, 235 (2017).

Here, the facts found by the judge in support of the reasonableness of the stop are as follows:  ShotSpotter alerted DeCosta to five potential gunshots in a residential area, near a cemetery.  Upon reaching the area, DeCosta noticed three young men, all wearing black, crossing the street in the opposite direction of the cemetery.  The juvenile was one of the three

4

young men.  Shortly thereafter, Decosta spoke to a roofer working on a roof that overlooked the cemetery.  The roofer told DeCosta he heard five gunshots and saw three men wearing black running in the direction of where DeCosta saw the three young men.  DeCosta proceeded to drive around until he saw the juvenile, at which point he performed the stop.

In arguing that DeCosta did not have reasonable suspicion to stop him, the juvenile raises several alternative interpretations of the judge's findings of facts.  Broadly, the juvenile argues that nobody saw a gun being fired and that the stop was not based on reasonable suspicion because the juvenile was simply at the proverbial "wrong place at the wrong time." Of course, this ignores that reasonable suspicion may be based on "reasonable inferences" drawn from articulable facts (citations omitted).  Matta, 483 Mass. at 365.  Where ShotSpotter had alerted DeCosta to five potential gunshots in the vicinity of the cemetery, and where an informant had heard five gunshots and then saw three males in the cemetery, all wearing black, running away, it was reasonable for DeCosta to infer that the group of three young men, also wearing black, that he had earlier seen near the location of the shots, moving away from the cemetery, had committed the crime of discharging a firearm within 500 feet of a building, either as the shooter or

5

as a joint venturer. See Commonwealth v. Severino, 106 Mass. App. Ct. 170, 187 (2025) (Toone, J., concurring) (discharging firearm within 500 feet of building subject to principal or joint venturer liability).

Next, the juvenile argues that the informant, the roofer, was too unreliable for the information to form the basis of reasonable suspicion. "Information from an anonymous informant may warrant reasonable suspicion if it is shown to be reliable." Commonwealth v. Costa, 448 Mass. 510, 514 (2007). "[O]ur evaluation of the tip's indicia of reliability will be focused on the informant's reliability and his or her basis of knowledge. Independent police corroboration may make up for deficiencies in one or both of these factors" (citation omitted). Id. at 514-515. To be sure, the informant was unidentified. But he had a strong basis of knowledge, being present in the vicinity of the crime with a good vantage from which to see and hear it. Furthermore, the fact that the information was corroborated by the ShotSpotter alert for the same number of gunshots and DeCosta previously saw three young men who matched the informant's description leaves us satisfied that the informant was adequately reliable. See Commonwealth v. Manha, 479 Mass. 44, 48 (2018). The information that DeCosta possessed, along with reasonable inferences therefrom, were

6

adequate to establish the existence of reasonable suspicion. The motion to suppress on the basis of the stop was, accordingly, appropriately denied.

3. Reasonable suspicion the juvenile was armed and dangerous. In order to conduct a lawful patfrisk, "police must have a reasonable suspicion, based on specific articulable facts, that the suspect is armed and dangerous." Commonwealth v. Torres-Pagan, 484 Mass. 34, 38-39 (2020). Having concluded that the police had reasonable suspicion to believe that the juvenile had recently discharged a firearm in a residential area, it was likewise reasonable for them to believe that the juvenile was armed and dangerous. See Commonwealth v. Ford, 100 Mass. App. Ct. 712, 719 (2022) (reasonable suspicion that defendant had just repeatedly discharged firearm in residential neighborhood justifies reasonable suspicion that defendant was armed and dangerous).

The juvenile also argues that the police officers exceeded the scope of the patfrisk because, while the officers testified that they felt a "hard object," they did not immediately identify the items as a gun. We are not persuaded. The police need not have certainty that a given object is a weapon before performing a patfrisk for safety. See Commonwealth v. Silva, 366 Mass. 402, 406 (1974) ("Essentially, the question is whether

7

a reasonably prudent [person] in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger").  Given that the police had reasonable suspicion that the juvenile was armed and dangerous, we are satisfied that the officers were justified in performing a search upon feeling hard objects in the juvenile's pockets.[3] The motion to suppress was appropriately denied.

Order denying motion to
  suppress affirmed.

By the Court (Rubin, Walsh &
  Hershfang, JJ.[4]),

Clerk

Entered:   January 20, 2026.

---

[3] We are similarly unpersuaded by the juvenile's implied argument that the second officer's discovery of the gun was somehow inappropriate because he had felt the object in question by plain feel while helping the juvenile to his feet, rather than conducting a "traditional patfrisk."

[4] The panelists are listed in order of seniority.

8